## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ERIC BERGER, JASON LONDRIGAN, LACEY TIMMINS, KEVIN CULBERTSON, MARIA GONZALEZ, and GRACE CONDON, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-01435-VMC |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | |
| HOME DEPOT U.S.A., INC., a Delaware corporation, | |
| Defendant. | |

## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

Plaintiffs Eric Berger, Jason Londrigan, Lacey Timmins, Kevin Culbertson, Maria Gonzalez, and Grace Condon (collectively, "Plaintiffs") bring this class action complaint individually and on behalf of all others similarly situated against Home Depot U.S.A., Inc. ("Defendant" or "Home Depot"). The allegations contained in this class action complaint are based on Plaintiffs' personal knowledge of facts pertaining to themselves and upon information and belief, including further investigation conducted by Plaintiffs' counsel, as to the remainder.

## I.    NATURE OF THE ACTION.

1.    This is a class action lawsuit brought to remedy Defendant's misleading and unlawful pricing, sales, and discounting practices on its website www.homedepot.com and in its California stores. The products at issue include all goods offered at a sale or discounted price from a higher reference price, including without limitation: appliances, tools, outdoor equipment, home equipment, furniture, and garden equipment, and many other categories. Defendant advertises false, misleading, and inflated comparison reference prices to deceive customers into a belief that the sale price is a discounted bargain price.

2.    Anyone visiting the website who buys an item on "sale" from a stricken former or regular price is misled because that item has not been listed for sale or sold *on the website*, in the recent past and for a substantial time, at the former price. Yet Defendant's use of inflated reference prices, strikethrough pricing and discounting,

and purported limited time sales all lead reasonable consumers to believe the products in fact had been offered on the website at the former and regular price, in the recent past, for a substantial period of time.

3.     Likewise, consumers who visit Home Depot's California stores and buy an item on "sale" are misled because that item has not been offered or sold at Home Depot, in the recent past and for a substantial time, at the reference price. Yet Defendant's use of inflated reference prices, discounting, and purported limited time sales all lead reasonable consumers to believe the products in fact had been offered at Home Depot at the former and regular price, in the recent past, for a substantial period of time.

4.     When Defendant employs this fake sale scheme, the reference prices are false and misleading.  They are not former or regular prices at which products were offered on the website in the recent past, for a substantial period of time. Nor are they former or regular prices offered at local stores in the recent past, for a substantial period of time. Online and in stores, they are inflated prices posted to lure consumers into purchasing items from Defendant on the false promise of a sale price.

5.     Additionally, and in the alternative, reasonable consumers expected the products were valued in the marketplace at the reference prices. Said differently, reasonable consumers interpret Defendant's advertisements to mean that, if they buy now, they will receive a price reduction from the price at which Defendant ordinarily

sells its products and a price reduction from the products' market value. But the products were rarely, if ever, sold in the marketplace at the reference prices, let alone in the recent past and for a substantial period of time.

6.    Beyond that, Defendant's discounted products not only have a market value lower than the promised regular price, but the market value is also lower than the discounted "sale" price.  By using false reference pricing and sales, Defendant artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the price paid.  To illustrate, assume a company knows a product will sell in the marketplace at $30.  But to increase revenue and capture market share, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off).  Because consumers value products based on the regular price, and a purported limited-time sale conveys additional savings, the company can sell that $30 product for $40.

7.    As a result, consumers are deceived into spending money they otherwise would not have spent, purchasing items they would not have purchased, and/or spending more money for an item than they otherwise would have absent deceptive marketing.

## II.    PARTIES.

8.    Plaintiff Eric Berger is an individual citizen of the State of Texas and

resident of Harris County, Texas. He was present in Texas at the time he made his purchase from the website.

9.    Plaintiff Jason Londrigan is an individual citizen of the State of Texas and resident of Tarrant County, Texas. He was present in Texas at the time he made his purchase from the website.

10.    Plaintiff Lacey Timmins is a resident of the State of California and County of Stanislaus. She was present in Stanislaus County at the time she made her purchase from the website.

11.    Plaintiff Kevin Culbertson is a resident of the State of California and County of San Mateo. He was present in San Mateo County at the time he made his purchase from Home Depot's website.

12.    Plaintiff Maria Gonzalez is a resident of the State of California and County of Merced. She was present in Merced County at the time she made her purchase from Home Depot's website.

13.    Plaintiff Grace Condon is a resident of the State of California and County of Alameda. She was physically present when she made her purchase from Home Depot's store in Oakland, Alameda County, California.

14.    Defendant Home Depot is a Delaware corporation. Defendant is an online and brick-and-mortar retailer of home and gardening products, including without limitation appliances, tools, outdoor equipment, home equipment, furniture,

garden equipment, and hundreds of other categories. Through the website, Defendant sells its products to consumers in California and nationwide. Defendant is headquartered in Georgia.

## III.   JURISDICTION AND VENUE.

15.    This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.  As set forth herein, Defendant owns and operates the website, and marketed, sold, and shipped products to purchasers located in this district, and is headquartered in this district.

17.    Further, as set forth herein, Defendant has contacts in this district sufficient to subject it to the personal jurisdiction of this district as if this district were a separate state. Defendant continuously and systematically places goods into the stream of commerce for distribution in Georgia, maintains an interactive commercial website, offers to ship products to Georgia, and allows customers in Georgia to order products.  Exercising jurisdiction over Defendant is fair, just, and

reasonable considering the quality and nature of Defendant's acts that occur in Georgia and which affect interests located in Georgia. Defendant has purposefully availed itself of the privilege of conducting activities in Georgia, and should reasonably anticipate being haled into court in Georgia.

## IV.    GENERAL ALLEGATIONS.

### A.    Company Background.

18.    On the website's About Us page, Defendant describes itself as "the world's largest home improvement retailer."[1]

19.    Home Depot was "founded in 1978."[2] "Today, The Home Depot is the world's largest home improvement retailer with approximately 475,000 orange-blooded associates and more than 2,300 stores in the U.S., Canada and Mexico. The typical store today averages 105,000 square feet of indoor retail space, interconnected with an e-commerce business that offers more than one million products for the DIY customer, professional contractors, and the industry's largest installation business for the Do-It-For-Me customer."[3]

20.    Defendant, through the website, has sold millions of units of merchandise to consumers in Georgia, California, and nationwide.

---

[1] https://corporate.homedepot.com/page/about-us
[2] Id.
[3] Id.

**B.     Defendant's False and Deceptive Pricing Scheme.**

> **1.     The Products Are Not Regularly Listed or Sold on the Website at the Reference Prices.**

21.     Defendant's business model relies on deceiving consumers with false or misleading sales.

22.     On any given date, many products on the website are represented as being discounted from a substantially higher reference price.  On individual listing pages, the supposed markdowns are represented to the consumer by prominently displaying a "crossed-out" reference price next to the sale price, and "Save $__" or "Save __%".  A representative example is shown below. (For some products, the sale prices are only shown when added to a customer's cart to further incentivize a purchase.)



23.     Defendant employs these deceptive tactics to convey to customers that the product was regularly listed or sold on the website at the reference price. Reasonable consumers understand the strikethrough reference price, or the adjacent "Save $__" or "Save __%", independently and/or collectively convey the product was listed or sold *on the website* at the reference price, in the recent past and for a substantial period of time, but is now being listed and sold to the customer at a substantial discount.

24.     However, this reference price is a falsely inflated price because Defendant rarely, if ever, lists or sells the items at the reference price. Instead, the reference price misleads customers into believing that the displayed reference price is a former or regular price at which Defendant usually lists and sells the item in the recent past. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount.  Representative examples of such false and misleading advertising are shown below.

a.  <u>18 cu. ft. Top Freezer Refrigerator in Stainless Steel</u>

i.  04/16/2024:  $678.00 (sale price); $999.00 (reference price)



    ii. [02/15/2024](02/15/2024): $648.00 (sale price); $999.00 (reference price)

    iii. [01/09/2024](01/09/2024): $648.00 (sale price); $999.00 (reference price)

    iv. [12/17/2023](12/17/2023): $648.00 (sale price); $999.00 (reference price)

    v. [11/19/2023](11/19/2023): $648.00 (sale price); $999.00 (reference price)

    vi. [09/22/2023](09/22/2023): $678.00 (sale price); $999.00 (reference price)

    vii. [06/01/2023](06/01/2023): $648.00 (sale price); $999.00 (reference price)

b. <u>Electrolux 4.5 cu. ft. Stackable Front Load Washer in Titanium with SmartBoost, Optic Whites, and Pure Rinse</u>

    i. [04/16/2024](04/16/2024): $898.00 (sale price); $1349.00 (reference price)



    ii. [01/18/2024](01/18/2024): $898.00 (sale price); $1349.00 (reference price)

    iii. [12/17/2023](12/17/2023): $898.00 (sale price); $1349.00 (reference price)

    iv. [09/01/2023](09/01/2023): $1098.00 (sale price); $1349.00 (reference price)

c. <u>GE 24 in. Built-In Tall Tub Top Control Stainless Steel Dishwasher w/Sanitize, Dry Boost, 52 dBA</u>

     i. 04/16/2024: $428.00 (sale price); $729.00 (reference price)



     ii. 12/16/2023: $428.00 (sale price); $729.00 (reference price)

     iii. 09/28/2023: $428.00 (sale price); $729.00 (reference price)

d. Whirlpool 1.7 cu. ft. Over the Range Microwave in Stainless Steel with Electronic Touch Controls

     i. 04/16/2024: $198.00 (sale price); $399.00 (reference price)



     ii. 01/07/2024: $228.00 (sale price); $399.00 (reference price)

     iii. 02/04/2024: $248.00 (sale price); $399.00 (reference price)

     iv. 03/03/2024: $228.00 (sale price); $399.00 (reference price)

     v. 12/07/2023: $198.00 (sale price); $399.00 (reference price)

     vi. 11/07/2023: $198.00 (sale price); $399.00 (reference price)

vii.  06/01/2023: $228.00 (sale price); $399.00 (reference price)

viii.  05/22/2023: $228.00 (sale price); $399.00 (reference price)

ix.  02/27/2023: $228.00 (sale price); $399.00 (reference price)

x.  09/28/2019: $228.00 (sale price); $319.00 (reference price)

e.  <u>LG Smart 30 in. W 2 cu. ft. Over the Range Microwave with EasyClean 1,050-Watt in PrintProof Stainless Steel</u>

i.  04/16/2024: $348.00 (sale price); $459.00 (reference price)



ii.  12/05/2023: $298.00 (sale price); $459.00 (reference price)

iii.  09/29/2023: $298.00 (sale price); $459.00 (reference price)

iv.  07/03/2023: $298.00 (sale price); $459.00 (reference price)

v.  03/13/2023: $398.00 (sale price); $459.00 (reference price)

f.  <u>LG 30 in. 6.3 cu. ft. Smart Wi-Fi Enabled Fan Convection Electric Range Oven with AirFry and EasyClean in. Stainless Steel</u>

      i.  04/16/2024: $898.00 (sale price); $1049.00 (reference price)



     ii.  03/22/2024: $898.00 (sale price); $1049.00 (reference price)

    iii.  02/15/2024: $898.00 (sale price); $1049.00 (reference price)

    iv.  01/04/2024: $898.00 (sale price); $1049.00 (reference price)

     v.  12/14/2023: $948.00 (sale price); $1049.00 (reference price)

    vi.  11/03/2023: $798.00 (sale price); $1049.00 (reference price)

   vii.  09/23/2023: $798.00 (sale price); $1049.00 (reference price)

  viii.  08/06/2023: $948.00 (sale price); $1049.00 (reference price)

g.  Samsung 6.3 cu. ft. Smart Wi-Fi Enabled Convection Electric Range with No Preheat AirFry in Stainless Steel

      i.  04/16/2024: $798.00 (sale price); $1099.00 (reference price)



    ii.  02/15/2024: $798.00 (sale price); $1099.00 (reference price)

    iii.  01/04/2024: $798.00 (sale price); $1099.00 (reference price)

    iv.  12/17/2023: $798.00 (sale price); $1099.00 (reference price)

    v.  11/03/2023: $698.00 (sale price); $1099.00 (reference price)

    vi.  09/21/2023: $778.00 (sale price); $1099.00 (reference price)

    vii.  08/25/2023: $778.00 (sale price); $1099.00 (reference price)

h.  <u>GE 30 in. 5 Element Free-Standing Electric Range in Stainless Steel with Crisp Mode</u>

    i.  04/16/2024: $848.00 (sale price); $949.00 (reference price)



14

ii.  01/04/2024: $848.00 (sale price); $949.00 (reference price)

iii.  12/14/2023 $698.00 (sale price); $949.00 (reference price)

iv.  11/03/2023: $678.00 (sale price); $949.00 (reference price)

v.  09/25/2023: $648.00 (sale price); $949.00 (reference price)

vi.  08/25/2023: $648.00 (sale price); $949.00 (reference price)

i.  Milwaukee M12 FUEL 12V Lithium-Ion Brushless Cordless Hammer

Drill Impact Driver

i.  04/08/2024: $229.00 (sale price); $339.00 (reference price)



ii.  05/13/2024: $269.00 (sale price); $339.00 (reference price)

iii.  07/03/2024: $269.00 (sale price); $339.00 (reference price)

j.  DEWALT 20-Volt MAX ToughSystem Lithium-Ion 6-Tool Cordless

Combo Kit

i.  04/08/2024: $499.00 (sale price); $749.00 (reference price)



ii.  07/03/2024: $499.00 (sale price); $749.00 (reference price)

    k.  <u>Milwaukee M12 12V Lithium-Ion Cordless Drill Driver Impact Driver</u>

        <u>Combo Kit (2-Tool)</u>

         i.  04/08/2024: $139.00 (sale price); $195.97 (reference price)

       ii.  07/03/2024: $139.00 (sale price); $195.97 (reference price)



25.    Additional representative examples of Home Depot's false and misleading reference pricing are shown at "**Appendix 1.**"

26.    On information and belief, this is not a new or isolated sales practice by Defendant, but currently occurs and continued regularly throughout at least 2024, 2023, and years earlier.

27.    These pricing and advertising practices are deceptive and pressure consumers into purchasing products from Defendant at an inflated price.

**2.    Defendant Advertises the Same or Substantially Similar Discounts on its Website and in California Stores.**

28.    The discounted prices on Defendant's website are consistent with the discounted prices in its California stores.

29.    Buried on Home Depot's website is an FAQ page entitled "About Shopping Online At The Home Depot." There, Home Depot states its online prices

only "vary occasionally" from the prices charged at local stores. Stated differently, Home Depot's discounted prices are consistent online and in local stores, with few exceptions.

30.     Thus, Plaintiffs allege on information and belief that Home Depot advertises the same discounts, using the same reference pricing, online and in California stores.

**3.     The Reference Prices are not the Market Price of the Products, Including During the Rolling Three-Month Period Prior to Offering.**

31.     Separately, the advertised reference prices were not prevailing market prices.

32.     On information and belief, the reference prices are unsubstantiated and based on an undisclosed formula, are outdated, or are cherrypicked, and thus not representative of the prevailing market prices.

33.     To the extent competing retailers concurrently sell the identical products offered by Defendant, on information and belief, Defendant does not independently verify the reference prices are the prevailing market prices at which the products are listed for sale by other retailers for a substantial period of time and in substantial quantities. And on information and belief, Defendant does not update the reference prices on a daily basis.

34.     On information and belief, Defendant's advertised reference prices are

higher than the prevailing market prices for the identical products. Because Defendant consistently sells the products at issue at prices significantly (i.e., 25% or more) lower than its advertised former prices, there is no reasonable basis to believe Defendant consistently sells its products at prices below the prevailing market prices. Economic principles dictate that, in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price.

35.    For example, from at least September 2023 through January 2024, Home Depot claimed the former or regular price for a GE 7.2 cu. Ft. Electric Dryer in White with Wrinkle Care ("GE Electric Dryer") was $779. However, since at least August 2023 through December 2023, one of Home Depot's primary competitors in the retail home appliance market, Best Buy, sold that same dryer for, at most, $549—sometimes reducing the price even further to $499. Similarly, Orville's also sold that same dryer from at least November 2023 through December 2023 for $497. More representative examples for which Home Depot's advertised reference prices are higher than the actual prices charged at comparable big-box retailers are identified in **Appendix 2**.

36.    Additionally, many of Defendant's products are sold exclusively by Defendant. These include but are not limited to products offered under the brand names Glacier Bay, Ryobi, Husky, Hampton Bay, Everbilt, Defiant, LifeProof, and HDX—each of which has an exclusive-retailer relationship with Home Depot.  And

Defendant's deceptive pricing scheme applied to these exclusive products too. Accordingly, the prevailing market price for Defendant's exclusive products is Defendant's discounted offering price—not the fictitious reference price.

37.    To take but one example, Home Depot's website lists an American Standard toilet[4] with a prominent notice that this product is "Exclusive" to Home Depot. As of July 8, 2024, this product was listed on the website at a purported discount price of $287.00, with a strikethrough price of $338.10. This same product was listed at a discount price of $289.00 with a strikethrough price of $338.10 as of January 18, 2024—nearly six months prior. Publicly available product reviews indicate droves of customers purchased this product at the purported "savings" price during the period the deceptive strikethrough pricing has been displayed. Home Depot thus sold numerous exclusive products to its customers on the basis of deceptive strikethrough prices throughout the relevant period.

### C.    Plaintiffs' Purchases.

***Plaintiff Berger***

38.    Plaintiff Eric Berger purchased one of the products from the website that Home Depot advertised with a false reference price. Mr. Berger purchased a

---

[4] American Standard Lexington 2-Piece 1.28 GPF Single Flush Elongated Toilet in White.

Samsung Front Load Gas Dryer from the website in November 2023 for $798.00.[5] The unit was advertised at a purported 33% discount from its strikethrough price of $1,199.00. But the dryer Mr. Berger purchased had been listed at various "sale" prices far below the $1,199.00 strikethrough price since at least September 2023.

39.     Mr. Berger interpreted the strikethrough price advertised on Home Depot's website as indicating this product was being sold at a limited-time discount from the price Home Depot regularly charged in the recent past and for a substantial time. This motivated him to purchase the product right away, to take advantage of what he perceived to be a fleeting deal.

40.     Mr. Berger thus viewed and relied on the website's purported current and limited-time sale promotion.  He reasonably relied on the above representations that the product (1) had a former and regular price of the stated reference price, (2) had been offered for sale *on the website* at the stated reference price, in the recent past, on a regular basis, and for a substantial time, and (3) was truly on sale and being sold at a substantial discount, such that the product was valued at the false reference price.

41.     The long-advertised "discount" on the dryer Mr. Berger purchased induced him to purchase the product, and the artificial demand created by Home

---

[5] Samsung 7.4 cu. ft. Vented Smart Front Load Gas Dryer with Steam Sanitize+ in Brushed Black.

Depot's false-reference pricing scheme caused him to pay more than he would have otherwise. He would not have purchased this product from Home Depot, or would have paid less for it, were it not for the deceptive strikethrough price that Home Depot listed on the product page.

42.     Home Depot did not intend the strikethrough price it advertised to Mr. Berger to serve as a comparison price to what other retailers charged for the same product, and Mr. Berger did not understand it this way. But, in any event, Home Depot lists this product at a reference price *higher* than the prevailing market price. As of July 8, 2024, Home Depot lists this product with a $1,399.00 strikethrough reference price. As of this same date, Samsung's website lists this dryer for sale at $1,259.00. On information and belief, a similar disparity existed at the time Mr. Berger purchased his dryer from Home Depot.

43.     Plaintiff Berger continues to be interested in purchasing home goods and products that are available at Home Depot and offered at discounted prices, but he will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from HomeDepot.com. Absent injunctive relief, Plaintiff cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

*Plaintiff Londrigan*

44.    Plaintiff Jason Londrigan purchased a Samsung Top-Load Washer[6] from the website in September 2023 advertised with a false reference price of $578.00. The unit was advertised at a purported 35% discount from its strikethrough price of $899.00. But, on information and belief, the washer Mr. Londrigan purchased had been listed at various "sale" prices far below the $899.00 strikethrough price for many months prior. In the months since Mr. Londrigan's purchase (at least as of July 2024), this washer has *never* been offered or sold at its "original" price—with "discount" prices ranging from $550.00 to $800.00.

45.    Mr. Londrigan interpreted the strikethrough price advertised on Home Depot's website as indicating this product was being sold at a limited-time discount from the price Home Depot regularly charged in the recent past and for a substantial time. This motivated him to purchase the product right away, to take advantage of what he perceived to be a fleeting deal.

46.    Mr. Londrigan thus viewed and relied on the website's purported current and limited-time sale promotion.   He reasonably relied on the above representations that the product (1) had a former and regular price of the stated reference price, (2) had been offered for sale *on the website* at the stated reference

---

[6] Samsung 5 cu. ft. High-Efficiency Top Load Washer with Impeller and Active Water Jet in White.

price, in the recent past, on a regular basis, and for a substantial time, and (3) was truly on sale and being sold at a substantial discount, such that the product was valued at the false reference price.

47. The long-advertised "discount" on the dryer Mr. Londrigan purchased induced him to purchase the product, and the artificial demand created by Home Depot's false-reference pricing scheme caused him to pay more than he would have otherwise. He would not have purchased this product from Home Depot, or would have paid less for it, were it not for the deceptive strikethrough price that Home Depot listed on the product page.

48. Home Depot did not intend the strikethrough price it advertised to Mr. Londrigan to serve as a comparison price to what other retailers charged for the same product, and Mr. Londrigan did not understand it this way. But, in any event, Home Depot advertises this product at reference price *higher* than the prevailing market price. As of July 8, 2024, Home Depot lists this product with an $899.00 strikethrough reference price. Samsung's website lists this dryer for sale at $809.00. On information and belief, a similar disparity existed at the time Mr. Londrigan purchased his washer from Home Depot.

49. Plaintiff Londrigan continues to be interested in purchasing home goods and products that are available at Home Depot and offered at discounted prices, but he will be unable to trust and rely on Defendant's advertising, and so will

not purchase the products from HomeDepot.com. Absent injunctive relief, Plaintiff cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

***Plaintiff Timmins***

50.    On February 17, 2024, Plaintiff Timmins visited the website and purchased a GE 24-inch Top Control Portable Black Dishwasher with Stainless Steel Interior advertised with a false reference price. Based on and consistent with archived copies of the website, Plaintiff saw on the listing page a strikethrough regular price of $949.00, an adjacent "Save 36%," and a sale price of $598.00. This motivated her to purchase the product right away, to take advantage of what she perceived to be a fleeting deal. She then proceeded to purchase the product for $598.00 with the understanding she was receiving all advertised discounts off the former and regular price charged by Home Depot. The product was shipped to her address in Stanislaus County, California.

51.    A screenshot of the product listing dated April 17, 2024 is below. The product was still on sale, then for $628.00 with a strikethrough reference price of $949.00.



52.    That sale was false and misleading. Based on archived copies of the website, the product was regularly offered on the website at a discounted price.

    a.  04/14/2024 - $628.00 (sale price) / $949.00 (regular price)

    b.  04/10/2024 - $628.00 (sale price) / $949.00 (regular price)

    c.  12/09/2023 - $598.00 (sale price) / $949.00 (regular price)

    d.  10/03/2023 - $598.00 (sale price) / $949.00 (regular price)

    e.  03/13/2023 - $628.00 (sale price) / $949.00 (regular price)

53.    Further, a screenshot of the product listing dated July 3, 2024 is below. On that date, the product was still on sale, again for $598.00 with a strikethrough reference price of $949.00 and "Save $351.00 (37%)."



54.     Plaintiff thus viewed and relied on the website's purported current and limited-time sale promotion.  She reasonably relied on the above representations that the product (1) had a former and regular price of the stated reference price, (2) had been offered for sale *on the website* at the stated reference price, in the recent past, on a regular basis, and for a substantial time, and (3) was truly on sale and being sold at a substantial discount, such that the product was valued at the false reference price.

55.     The dishwasher Plaintiff Timmins purchased was not substantially marked down or discounted, and any discount she was receiving had been grossly exaggerated.

56.     For at least the three-month period prior to Plaintiff Timmins's purchase, and on information and belief months and years more, Defendant very rarely, if ever, offered any of the discounted items sold on its website at the reference prices.

57.     Plaintiff Timmins would not have purchased the item at the advertised price, or would not have paid as much as she did, had Defendant been truthful. Plaintiff Timmins was persuaded to make her purchase because of the misleading sale based on false reference prices.

58.     Plaintiff Timmins continues to be interested in purchasing home goods and products that are available at Home Depot and offered at discounted prices, but she will be unable to trust and rely on Defendant's advertising, and so will not

purchase the products from HomeDepot.com. Absent injunctive relief, Plaintiff Timmins cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

***Plaintiff Culbertson***

59.    On January 2, 2024, Plaintiff Culbertson visited the Home Depot website and purchased a GE Electric Dryer. Based on and consistent with archived copies of the website, Plaintiff Culbertson saw on the listing page a former price of $779.00 which was stricken through and adjacent to a message that read "See Lower Price in Cart." This motivated him to purchase the product right away, to take advantage of what he perceived to be a fleeting deal. He added the GE Electric Dryer to his cart then proceeded to purchase the product for $528.00 with the understanding he was receiving all advertised discounts off the former and regular price charged by Home Depot. The product was shipped to his address in San Mateo County, California.

60.    That sale was false and misleading. Based on archived copies of Home Depot's website, the product was regularly offered on the website at a "discounted" price.

    a.  09/01/2023 - $548.00 (sale price) / $779.00 (former price)

     b.  10/02/2023 - $548.00 (sale price) / $779.00 (former price)

     c.  11/30/2023 - $498.00 (sale price) / $779.00 (former price)

     d.  01/02/2024 - $528.00 (sale price) / $779.00 (former price)

61.    Plaintiff Culbertson thus viewed and relied on the website's purported then-current and limited time "sale." He reasonably relied on the above representations that the product (1) had a former and regular price of the stated reference price, (2) had been offered for sale *on the website* at the stated reference price, in the recent past, on a regular basis, and for a substantial time, and (3) was truly on sale and being sold at a substantial discount, such that the product was valued at the false reference price

62.    The sale was also false and misleading because, based on archived copies of Orville's and Best Buy's website, the prevailing market price for the same GE Electric Dryer was never $779.00.

63.    Orville's offered the GE Electric Dryer on its website at the following prices:

     a.  11/11/2023 - $497.00

     b.  11/30/2023 - $497.00

     c.  12/01/2023 - $497.00

64.    Best Buy offered the GE Electric Dryer on its website at the following prices:

a.  08/09/2022 - $579.99

b.  08/18/2023 - $549.99

c.  08/25/2023 - $549.99

d.  09/02/2023 - $549.99

e.  09/15/2023 - $549.99

f.  09/21/2023 - $549.99

g.  10/06/2023 - $549.99

h.  11/03/2023 - $499.99

i.  11/04/2023 - $499.99

j.  11/10/2023 - $499.99

k.  11/17/2023 - $499.99

l.  11/23/2023 - $499.99

m. 12/05/2023 - $499.99

n.  12/14/2023 - $529.99

o.  12/20/2023 - $529.99

65.    The electric dryer Plaintiff Culbertson purchased was not substantially marked down or discounted, and any discount he received had been grossly exaggerated.

66.    For at least the three-month period prior to Plaintiff Culbertson's purchase, and on information and belief months and years more, Defendant very

rarely, if ever, offered any of the discounted items sold on its website at the reference prices.

67.    Plaintiff Culbertson would not have purchased the item at the advertised price, or would not have paid as much as he did, had Defendant been truthful—he would have paid less at another retailer, or would have waited for the product to *actually* go on sale. Plaintiff Culbertson was persuaded to make his purchase because of the misleading sale based on false reference prices.

68.    Plaintiff Culbertson continues to be interested in purchasing home goods and products that are available at Home Depot and offered at discounted prices, but he will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from HomeDepot.com unless he has assurances that Home Depot's deceptive pricing practices have been rectified. Absent injunctive relief, Culbertson cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's false sales practices are perpetual.

**Plaintiff Gonzalez**

69.    On January 2, 2024, Plaintiff Gonzalez visited Home Depot's website and purchased a GE 24 in. Built-In Tall Tub Top Control Fingerprint Resistant Stainless-Steel Dishwasher ("GE Dishwasher"). Based on and consistent with

archived copies of the website, Plaintiff Gonzalez saw on the listing page a former or regular price of $829.00 which was stricken through, and adjacent to a sale price of $478.00. This motivated her to purchase the product right away, to take advantage of what she perceived to be a fleeting deal. She then proceeded to purchase the product for $478.00 with the understanding she was receiving all advertised discounts off the former and regular price charged by Home Depot. The product was shipped to her address in Merced County, California.

70.    That sale was false and misleading. Based on archived copies of Home Depot's website, the product was regularly offered on the website at a "discounted" price.

a.  06/02/2023 - $478.00 (sale price) / $829.00 (former price)

b.  11/29/2023 - $478.00 (sale price) / $829.00 (former price)

c.  01/02/2024 - $478.00 (sale price) / $829.00 (former price)

71.    Plaintiff Gonzalez thus viewed and relied on the website's purported current and limited-time sale promotion. She reasonably relied on the above representations that the product (1) had a former and regular price of the stated reference price, (2) had been offered for sale *on the website* at the stated reference price, in the recent past, on a regular basis, and for a substantial time, and (3) was truly on sale and being sold at a substantial discount, such that the product was valued at the false reference price.

72.    A screenshot of the product listing dated April 30, 2024 is below. On that date, the product was still on sale for $478.00 with a strikethrough price of $829.00.



73.    The sale was also false and misleading because, based on archived copies of various retailers' websites who also sold the same GE Dishwasher, the prevailing market price of the GE Dishwasher was never $829.00.

    a.  ABW Appliance, 06/01/2023 - $478.00

    b.  Best Buy, 06/09/2023 - $479.00

    c.  GE Appliances, 08/01/23 - $532.00

    d.  Best Buy, 08/12/2023 - $479.00

    e.  GE Appliances, 09/16/2023 - $532.00

    f.  American Freight, 09/24/2023 - $346.11

g. US Appliance, 10/04/2023 - $531

h. Best Buy, 12/27/2023 - $479.00

74.    The above-listed product Plaintiff Gonzalez purchased was not substantially marked down or discounted, and any discount she received had been grossly exaggerated.

75.    Moreover, for at least the three-month period prior to Plaintiff Gonzalez's purchase, and on information and belief months and years more, Defendant very rarely, if ever, offered any of the discounted items sold on its website at the advertised reference prices.

76.    Plaintiff Gonzalez would not have purchased the item at the advertised "sale" price, or would not have paid as much as she did, had Defendant been truthful—she would have paid less at another retailer, or would have waited for the product to actually go on sale. Plaintiff Gonzalez was persuaded to make her purchase because of the misleading "sale" based on false reference prices.

77.    Plaintiff Gonzalez continues to be interested in purchasing home goods and products that are available for purchase at Home Depot and offered at discounted prices, but she will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from HomeDepot.com unless she has assurances that Home Depot's deceptive pricing practices have been rectified. Absent injunctive relief, Plaintiff Gonzalez cannot know whether Defendant's former and regular

prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

***Plaintiff Condon***

78.    On October 16, 2022, Plaintiff Condon visited Home Depot's store in Oakland, California and purchased a GE 30-inch Electric Range ("GE Range"). Plaintiff Condon saw that the GE Range was on sale. Plaintiff Condon saw a sign with a former or regular price (termed the "was" price) of about $649.00, and an adjacent "sale" price of $528.00. She then proceeded to purchase the product for $528.00 with the understanding that she was receiving all advertised discounts off the former and regular price charged by Home Depot. The product was delivered to her address in Alameda County, California.

79.    Plaintiff Condon thus viewed and relied on Defendant's purported current and limited-time sale promotion. She reasonably relied on the above representations that the product (1) had a former and regular price of the stated reference price, (2) had been offered for sale at Home Depot's local stores at the stated reference price, in the recent past, on a regular basis, and for a substantial time, and (3) was truly on sale and being sold at a substantial discount, such that the product was valued at the false reference price.

80.    That sale was false and misleading. On information and belief, the

product was regularly discounted from the reference price. The sale was also false and misleading because, based on archived copies of various retailers' websites who sold the same GE Range, the prevailing market price of the GE Range was not $649.00. Historical pricing is listed below.

    a.  GE Appliances, 07/13/22 - $529.00

    b.  GE Appliances, 09/25/22 - $529.00

    c.  Best Buy, 04/10/2022 - $479.00

    d.  Best Buy, 09/07/2022 - $499.00

    e.  Best Buy, 09/28/2022 - $499.00

    f.  Best Buy, 10/12/2022 - $499.00

81.    The above-listed product Plaintiff Condon purchased was not substantially marked down or discounted, and any discount she received had been grossly exaggerated.

82.    Moreover, for at least the three-month period prior to Plaintiff Condon's purchase, and on information and belief months and years more, Defendant very rarely, if ever, offered any of the discounted items sold in its stores at the advertised reference prices.

83.    Plaintiff Condon would not have purchased the item at the advertised "sale" price, or would not have paid as much as she did, had Defendant been truthful—she would have paid less at another retailer, or would have waited for the

product to actually go on sale. Plaintiff Condon was persuaded to make her purchase because of the misleading "sale" based on a false reference price.

84.    Plaintiff Condon continues to be interested in purchasing home goods and products that are available at Home Depot and offered at discounted prices, but she will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from Home Depot unless she has assurances that Home Depot's deceptive pricing practices have been rectified. Absent injunctive relief, Plaintiff Condon cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

**D.    Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value.**

85.    Academic studies support the effectiveness of Defendant's deceptive pricing scheme.

86.    "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[7]    Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase,

---

[7] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

while their intention to search for a lower price decreases."[8]   Indeed, the U.S. Ninth Circuit Court of Appeals observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be."

87.     "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[9] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[10]

88.     Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[11]

89.     "[R]esearch has shown that retailer-supplied reference prices clearly

---

[8] *Id.* at 56 (emphasis added).

[9] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[10] Id.

[11] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[12]

90.    "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[13] This study also concluded "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[14]

91.    One study quantified this economic injury, concluding that "fake list prices have a strong influence on purchase outcomes, with a 1-dollar increase in the list price having the same positive effect on purchase likelihood as a 77-cent decrease in the actual selling price."[15]

92.    Accordingly, research confirms deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

---

[12] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[13] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990).

[14] Id.

[15] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail*, Harvard Bus. Sch. (Oct. 14, 2017).

### E.    Consumers Suffered Economic Harm.

93.    Defendant's falsely discounted products have a market value lower than the promised "regular" price, and as a result, consumers were harmed. As explained above, the reference prices are false and the products are rarely, if ever, offered or sold at the reference prices—let alone in the recent past and for a substantial time. In California, they were not during the rolling three-month period prior to the relevant purchases in this action.

94.    Additionally, Defendant's products not only have a market value lower than the promised regular price, but the value is also lower than the "sale" price.  By using deceptive reference pricing and discounts, Defendant artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the price paid.  Reasonable consumers would not have paid the prices charged had they known that the products were rarely, if ever, offered on the website at the reference prices. Alternatively, reasonable consumers would not have paid the prices charged had they known the reference prices were not the prevailing market prices.

95.    Consumers thus paid a "price premium" for the products.  If the reference prices were omitted from the product listings, then consumers would not have paid as much as they did for the products (or would not have purchased the products), and Defendant would not have been able to charge the prices it ultimately

did.

96.     Again, an example illustrates the point.  Assume a company knows a product will sell in the marketplace at $30.  But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off).  Because consumers value products based on the regular price, and a sale conveys additional savings, the company can sell that $30 product for $40. Defendant has done so.

### F.     Defendant's Deceptive Pricing Practice Violates Federal Law

97.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes like the ones employed by Defendant are deceptive practices that violate the FTCA.

98.     Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public on a *regular basis* for a *reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price* was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales

at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a *reasonably substantial period of time*, in the *recent*, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some *remote period in the past*, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduced.

99.    The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price.  Under 16 C.F.R. § 233.1:

(e) If the former price is set forth in the advertisement, *whether accompanied or not* by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the

ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

100.  The FTCA also prohibits retailers from offering fake limited duration sales.  See 16 C.F.R. § 233.5 which provides:

[Retailers] should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer.

…

They should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a 'limited' offer which, in fact, is not limited.

## G.    Class Action Allegations

101.  Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following classes (collectively "Class"):

**Nationwide Website Purchaser Class:**
All persons in the United States who purchased one or more items from www.HomeDepot.com, during the Class Period, at a discount from a higher reference price.

**California Website Purchaser Class:**
All persons in California who purchased one or more items from

www.HomeDepot.com, during the Class Period, at a discount from a higher reference price.

**California In-Store Purchaser Class:**
All persons in California who purchased one or more items from a Home Depot store, during the Class Period, at a discount from a higher reference price.

102.    Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.  Also excluded from the Class are persons or entities that purchased products from Defendant for purposes of resale.

103.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.[16]

104.    Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

---

[16] The Class Period begins at minimum 4 years from the date litigation was commenced, but based on tolling, may extend beyond that date.

105.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiffs allege that there are in excess of 100,000 members of the Nationwide Class and/or California Classes.

106.    **Typicality.** Plaintiffs' claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

107.    **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiffs and their counsel intend to diligently prosecute this action.

108.    **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a.  Whether, during the Class Period, Defendant advertised false reference prices.

b.  Whether, during the Class Period, Defendant advertised deceptive price discounts from reference prices.

c.  Whether the products listed on Defendant's website during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at discounted prices.

d.  Whether the products offered at Home Depot's California stores during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at discounted prices.

e.  Whether Defendant's deceptive pricing scheme violates the Georgia Fair Business Practices Act.

f.  Whether Defendant's deceptive pricing scheme using false reference prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.

g.  Whether Defendant's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17500, et seq.

h.  Whether Defendant's use of false reference prices on products offered on the website and/or in California stores during the Class Period was material.

i.  Whether Defendant had a duty to conspicuously disclose to customers that the reference prices were false former/regular prices.

j.  Whether the members of the Class are entitled to damages and/or restitution.

k.  Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

l.  Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

109.  **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify

the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

110. **Substantial Similarity**. The products at issue in the action are substantially similar in all material respects. Namely, the products were all advertised with a false reference price and sale price. The products are also all sold by Defendant and fall under the umbrella of home goods and home improvement products, including appliances, tools, outdoor equipment, home equipment, furniture, garden equipment, and many other categories.

111. **Declaratory and Injunctive Relief – Rule 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all members of the Class, thereby making appropriate final injunctive relief and declaratory relief,

as described below, with respect to the members of the Class as a whole.

112.    **Issue Certification.  –Rule 23(c)(4).** As an alternative to Rule 23(b)(2) and/or 23(b)(3), Plaintiffs seek issue certification under Rule 23(c)(4) of liability issues common to all Class members.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

113.    All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiffs and Class members could not have reasonably discovered Defendant's practice of running perpetual and/or extended sales, based on deceptive reference prices and deceptive sale prices, at any time prior to commencing litigation.

114.    A reasonable consumer viewing the website or in-store pricing on multiple occasions would simply believe that a product is temporarily on sale.  Short of visiting and checking the website or store for months continuously, a reasonable consumer would not suspect Defendant's sales and pricing practices were false and misleading.  Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation.

115.    Plaintiffs did not learn of Defendant's deceptive practices alleged herein until commencing litigation against Defendant.

116.    As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VI.   CHOICE OF LAW.

117.   Plaintiffs plead choice of law in the alternative.

118.   Plaintiffs allege Georgia law applies to the Nationwide Website Purchaser Class claims and, alternatively, California law applies to the California Nationwide Website Purchaser Class and California In-Store Purchaser Class claims.

## VII.   CALIFORNIA LAW APPLIES TO THE CALIFORNIA CLASSES.

119.   The following allegations pertain only to Plaintiffs Timmins, Culbertson, Gonzalez, and Condon (collectively, "California Plaintiffs").

120.   The California Consumers Legal Remedies Act ("CLRA") provides for certain non-waivable rights and remedies. Thus, to the extent Georgia law materially differs from or conflicts with the CLRA, California Plaintiffs allege California law applies.

121.   Defendant's website includes various terms and conditions, some of which purport to impose Georgia law upon certain disputes between consumers and Home Depot. California Plaintiffs allege this Georgia choice of law provision is unenforceable and/or inapplicable as to them under California law.

122.   First, on the "Place Order" page during the checkout process, Defendant does not require any affirmative consent to an agreement containing a Georgia choice of law provision. The various terms are also inconspicuously buried at the bottom of the page, in relatively small font, in non-contrasting text, and are

not adequately distinguished or emphasized. The various terms are designed to be unobtrusive, easy to overlook, and barely visible to the naked eye.



123. Second, on the "Create Account" page, the various terms are inconspicuously located at the bottom of the page, in relatively small font, and in black non-contrasting text that is not distinguished or emphasized. The various terms are designed to be unobtrusive, easy to overlook, and barely visible to the naked eye. Additionally, none of the hyperlinks at the bottom of the page direct consumers to Defendant's "Terms of Use," and instead direct consumers to terms that are inapplicable and/or do not contain a Georgia choice of law provision.



124.  Third, the same deficiencies above apply to Defendant's "Sign In" page.



## FIRST CAUSE OF ACTION
## VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT (FBPA)
## O.C.G.A. § 10-1-390, et seq.
## (On Behalf of the Nationwide Website Purchaser Class)

125.   Plaintiffs restate paragraphs 1 through 118 as if set forth herein.

126.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Website Purchaser Class against Home Depot for violations of the Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-393, et. seq.[17]

127.   Plaintiffs bring this action as members of the consuming public who have suffered damages because of Home Depot's deceptive acts and practices. These practices have had and have the potential to have a harmful effect on the general consuming public.

128.   Under the FBPA, unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are unlawful.

129.   Home Depot is an entity that can be sued under the FBPA.

130.   Plaintiffs, and members of the proposed Class, are natural persons and thus "consumers" within the meaning of the statute.

131.   Plaintiffs have satisfied the statute's demand requirement.

---

[17] O.C.G.A. § 10-1-393.

132.   Home Depot's false-reference pricing scheme described above is a practice intended to encourage consumer transactions—*i.e.*, the sale of goods for household purposes—and is thus a "consumer act or practice" within the meaning of the statute.

133.   The FBPA provides a list of deceptive trade practices giving rise to liability under the statute, but also provides that the scope of unfair and deceptive trade practices under the statute is not limited to the specific practices listed. Home Depot's false-reference pricing scheme described above violates at least one of the specifically prohibited practices because, in perpetrating this scheme, Home Depot has repeatedly "ma[de] false or misleading statements concerning the reasons for, existence of, [and] amounts of price reductions."[18] In addition, by perpetrating the false-reference pricing scheme described above, Home Depot engaged in a course of deceptive trade practices under the statute's general definition of such practices.[19]

134.   Home Depot engaged in the deceptive false-reference pricing scheme described above intentionally, motivated by its desire to increase its sales and artificially inflate the prices of its products at the expense of consumers.

135.   As explained in paragraphs 38-84 above, Plaintiffs each viewed and

---

[18] O.C.G.A. § 10-1-393(b)(11).
[19] *Id.* § 10-1-393(a).

relied on the advertised reference prices and sale prices in making their purchases from Defendant.

136.   Home Depot's deceptive false-reference pricing scheme did in fact artificially inflate the prices of its products and thereby caused financial damage to Plaintiffs and the members of the proposed Nationwide Website Purchaser Class. O.C.G.A.   §   10-1-399(a).   Plaintiffs   seek   all   damages   available,   including compensatory and exemplary damages.

137.   Home Depot continues to engage in false-reference pricing as of the date of the filing of this Complaint, entitling Plaintiffs and the members of the Nationwide Website Purchaser Class to injunctive relief pursuant to O.C.G.A. § 10-1-399(a).

### SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL)
### CAL. BUS. & PROF. CODE § 17200, et seq.
### (On Behalf of the California Website Purchaser Class)

138.   Plaintiffs restate paragraphs 1 through 118 and 119 through 124 as if set forth herein.

139.   This claim is brought for the California Plaintiffs and California Website Purchaser Class.

140.   California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well

as "unfair, deceptive, untrue or misleading advertising."

***Fraudulent***

141.   Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

142.   Reasonable consumers are likely to be deceived by Defendant's false pricing conduct as alleged above.  Defendant misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices.  Defendant's deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price. Additionally, and in the alternative, Defendant's deceptive marketing gave consumers the false impression that its products were worth the reference price in the marketplace, but consumers only had to pay the discounted sale price.

143.   Defendant's representations that its products were on sale, that the sale was limited in time, that the products had a specific former and regular price, and that consumers were receiving discounts, were false and misleading.

144.   Defendant had a duty to disclose the truth about its pricing deception, including that the reference prices advertised on its website were not, in fact, prices at which Defendant's items were listed or sold on the website in the recent past for a reasonably substantial period of time, but in truth, the products never (or rarely)

were offered or sold at the reference prices. Reasonable consumers were likely to be deceived by this material omission.

145.  Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing they are receiving a product that is worth more than it actually is, by presenting a fake sale price.

146.  Defendant's representations were materially misleading to Plaintiffs and other reasonable consumers. Consumers are heavily influenced by price, including significant price reductions, as employed by Defendant's high-pressure sales tactics.

147.  Plaintiffs and the California Website Purchaser Class reasonably relied on Defendant's misleading representations and omissions, as detailed above, believing that they were receiving a genuine discount of limited duration from a prevailing and genuine regular and former price, and that the products were worth the reference price.

148.  Absent Defendant's misrepresentations, Plaintiffs and the California Website Purchaser Class would not have purchased the items they purchased from Defendant, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiffs and the California Website Purchaser Class's reliance was a substantial factor in causing them harm.

149.  Had the omitted information been disclosed, Plaintiffs and the

California Website Purchaser Class would have been aware of it and reasonably would have behaved differently. Among other things, Plaintiffs and the California Website Purchaser Class would not have purchased the items they purchased from Defendant, or, at minimum, would not have paid as much for the items as they did.

150. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiffs and members of the California Website Purchaser Class.

*Unfairness*

151. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

152. Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the website for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were worth more than they were.

153. Defendant's conduct was and continues to be of no benefit to reasonable consumers. It is misleading, unfair, unlawful, and is injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that

"misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Similarly, the FTCA and implementing regulations prohibit advertising a former price "for the purpose of establishing a fictitious [] price on which a deceptive comparison might be based" (16 C.F.R. § 233.1) and prohibit "offer[ing] an advance sale under circumstances where they do not in good faith expect to increase the price at a later date" (16 C.F.R. § 233.5). Defendant is siphoning sales away from sellers who compete fairly on price and do not promote fake former prices and fake sales of limited duration. Further, there is no benefit to consumers who pay a sale price that is actually a regular price.

154.   The harm to Plaintiffs and members of the California Website Purchaser Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

155.   As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiffs and members of the proposed California Website Purchaser Class.

***Unlawful***

156.   A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws

and treats these violations as unlawful practices independently actionable under the UCL.

157.   By engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations.  Specifically, as detailed herein, Defendant violated 16 C.F.R. §§ 233.1 and 233.5, and California Business & Professions Code sections 17501.

158.   In the alternative to those claims seeking remedies at law, Plaintiffs and California Website Purchaser Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example,

equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from those that govern legal claims.

159.    Plaintiffs, on behalf of themselves and the California Website Purchaser Class, seek restitution and restitutionary disgorgement of all moneys received by Defendant through the false pricing conduct described above.

160.    Plaintiffs, on behalf of themselves and the California Website Purchaser Class, seek an injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on

the website. Plaintiffs and class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing.

## THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL)
### CAL. BUS. & PROF. CODE § 17200, et seq.
### (On Behalf of the California In-Store Purchaser Class)

161.    Plaintiffs restate paragraphs 1 through 118 and 119 through 124 as if set forth herein.

162.    This claim is brought for Plaintiff Condon and the California In-Store Purchaser Class.

163.    California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

*Fraudulent*

164.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

165.    Reasonable consumers are likely to be deceived by Defendant's false pricing conduct as alleged above. Defendant misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices. Defendant's deceptive marketing

gave consumers the false impression that its products were regularly listed or sold by Home Depot for a substantially higher price. Additionally, and in the alternative, Defendant's deceptive marketing gave consumers the false impression that its products were worth the reference price in the marketplace, but consumers only had to pay the discounted sale price.

166.   Defendant's representations that its products were on sale, that the sale was limited in time, that the products had a specific former and regular price, and that consumers were receiving discounts, were false and misleading.

167.   Defendant had a duty to disclose the truth about its pricing deception, including that the reference prices advertised were not, in fact, prices at which Defendant's items were listed or sold in the recent past for a reasonably substantial period of time, but in truth, the products never (or rarely) were offered or sold at the reference prices. Reasonable consumers were likely to be deceived by this material omission.

168.   Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing they are receiving a product that is worth more than it actually is, by presenting a fake sale price.

169.   Defendant's representations were materially misleading to Plaintiff and other reasonable consumers. Consumers are heavily influenced by price, including significant price reductions, as employed by Defendant's high-pressure sales tactics.

170.   Plaintiff and the California In-Store Purchaser Class reasonably relied on Defendant's misleading representations and omissions, as detailed above, believing that they were receiving a genuine discount of limited duration from a prevailing and genuine regular and former price, and that the products were worth the reference price.

171.   Absent Defendant's misrepresentations, Plaintiff and the California In-Store Purchaser Class would not have purchased the items they purchased from Defendant, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiff and the California In-Store Purchaser Class's reliance was a substantial factor in causing them harm.

172.   Had the omitted information been disclosed, Plaintiff and the California In-Store Purchaser Class would have been aware of it and reasonably would have behaved differently. Among other things, Plaintiff and the California Website Purchaser Class would not have purchased the items they purchased from Defendant, or, at minimum, would not have paid as much for the items as they did.

173.   As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California In-Store Purchaser Class.

***Unfairness***

174.   Under the UCL, a business act or practice is "unfair" if its conduct is

substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

175. Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold by Home Depot for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were worth more than they were.

176. Defendant's conduct was and continues to be of no benefit to reasonable consumers. It is misleading, unfair, unlawful, and injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Similarly, the FTCA and implementing regulations prohibit advertising a former price "for the purpose of establishing a fictitious [] price on which a deceptive comparison might be based" (16 C.F.R. § 233.1) and prohibit "offer[ing] an advance sale under circumstances where they do not in good faith expect to increase the price at a later date" (16 C.F.R. § 233.5). Defendant is siphoning sales away from sellers who compete fairly on price and do not promote fake former prices and fake sales of limited duration. Further, there is no benefit to consumers who pay a sale price

that is actually a regular price.

177.    The harm to Plaintiff and members of the California In-Store Purchaser Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

178.    As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California In-Store Purchaser Class.

***Unlawful***

179.    A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations as unlawful practices independently actionable under the UCL.

180.    By engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations.  Specifically, as detailed herein, Defendant violated 16 C.F.R. §§ 233.1 and 233.5, and California Business & Professions Code sections 17501.

181.    In the alternative to those claims seeking remedies at law, Plaintiff and the California In-Store Purchaser Class members allege that there is no plain,

adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co*., 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu*

*Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from those that govern legal claims.

182.   Plaintiff, individually and on behalf of the California In-Store Purchaser Class, seeks restitution and restitutionary disgorgement of all moneys received by Defendant through the false pricing conduct described above.

183.   Plaintiff, individually and on behalf of the California In-Store Purchaser Class, seeks an injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products. Plaintiff and class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing.

## FOURTH CAUSE OF ACTION
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (FAL)**
**CAL. BUS. & PROF. CODE §§ 17500, et seq.**
**(On Behalf of the California Website Purchaser Class)**

184.   Plaintiffs restate paragraphs 1 through 118 and 119 through 124 as if set forth herein.

185.   This claim is brought for the California Plaintiffs and the California Website Purchaser Class.

186.   The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. ("FAL") provides, in relevant part, that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

187.   A separate section of the FAL, Cal Bus. & Prof. Code § 17501, provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

188.   As used in Cal Bus. & Prof. Code § 17501:

- The term "prevailing market price" refers to the "retail [price] if the offer is at retail." *Id.*

- The term "advertised thing" refers to the exact same product offered—

68

*not* an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

- The term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' 'was ___ now ___,' '**___% off**.'" 4 Cal. Code Regs., § 1301 (emphasis added).

- The "the three-month period is properly construed as a '***rolling***' period, that is, one whose beginning and end changes each day, thus requiring a ***daily recalculation*** of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 416 n.26 (2019) (emphasis added).

189. Defendant violated and continues to violate Cal Bus. & Prof. Code § 17500.

190. Defendant violated and continues to violate Cal Bus. & Prof. Code § 17501.

191. As alleged above, Defendant regularly disseminated false and misleading reference prices for the products offered for sale on the website, including to Plaintiffs and the California Website Purchaser Class. Defendant rarely, if ever, offered products on the website at the reference prices within the three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the products in the three months immediately preceding the publication.

192.    Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendant had no policies or procedures to verify and update the reference prices on a daily basis.

193.    Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly offered and sold for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were worth more than they were.

194.    Defendant knew that its advertised reference prices for the products sold on its website were untrue and/or misleading. Defendant knew that such products had rarely, if ever, been offered or sold on the website at the reference prices.

195.    As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiffs and members of the California Website Purchaser Class have suffered injury in fact and have lost money. Plaintiffs and the California Website Purchaser Class request restitution and an injunction prohibiting Defendant from continuing its false and misleading advertising practices in violation of California law in the future.

196.    Plaintiffs and California Website Purchaser Class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's

false and misleading advertising is ongoing.

197.   In the alternative to those claims seeking remedies at law, Plaintiffs and California Website Purchaser Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof

that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from those that govern legal claims.

## FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (FAL) CAL. BUS. & PROF. CODE §§ 17500, et seq.
### (On Behalf of the California In-Store Purchaser Class)

198.   Plaintiffs restate paragraphs 1 through 118 and 119 through 124 as if set forth herein.

199.   This claim is brought for Plaintniff Condon and the California In-Store Purchaser Class.

200.   The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. ("FAL") provides, in relevant part, that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

72

The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

201.  A separate section of the FAL, Cal Bus. & Prof. Code § 17501, provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a *former price* of any advertised thing, unless the alleged former price was the *prevailing market price* as above defined within *three months next immediately preceding* the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

202.  As used in Cal Bus. & Prof. Code § 17501:

- The term "prevailing market price" refers to the "retail [price] if the offer is at retail." *Id.*

- The term "advertised thing" refers to the exact same product offered— *not* an equivalent or similar product.  *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of *that item only*.") (emphasis added).

- The term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' 'was ___ now ___,' '___% off.'"  4 Cal. Code Regs., § 1301 (emphasis added).

- The "the three-month period is properly construed as a '*rolling*' period,

that is, one whose beginning and end changes each day, thus requiring a ***daily recalculation*** of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 416 n.26 (2019) (emphasis added).

203.    Defendant violated and continues to violate Cal Bus. & Prof. Code § 17500.

204.    Defendant violated and continues to violate Cal Bus. & Prof. Code § 17501.

205.    As alleged above, Defendant regularly disseminated false and misleading reference prices for the products, including to Plaintiff and the California In-Store Purchaser Class. Defendant rarely, if ever, offered products at the reference prices within the three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the products in the three months immediately preceding the publication.

206.    Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendant had no policies or procedures to verify and update the reference prices on a daily basis.

207.    Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly offered and sold for a substantially higher price in the recent past than they were and, thus, led to the false impression

that Defendant's products were worth more than they were.

208.   Defendant knew that its advertised reference prices for the in-store products were untrue and/or misleading. Defendant knew that such products had rarely, if ever, been offered or sold at the reference prices.

209.   As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the California In-Store Purchaser Class have suffered injury in fact and have lost money. Plaintiff and the California In-Store Purchaser Class request restitution and an injunction prohibiting Defendant from continuing its false and misleading advertising practices in violation of California law in the future.

210.   Plaintiff and the California In-Store Purchaser Class are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing.

211.   In the alternative to those claims seeking remedies at law, Plaintiff and California In-Store Purchaser Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere

existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from those that govern legal claims

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA

## CONSUMER LEGAL REMEDIES ACT (CLRA)
## CAL. CIV. CODE § 1750, et seq.
## (On Behalf of the California Website Purchaser Class)

212.  Plaintiffs restate paragraphs 1 through 118 and 119 through 124 as if set forth herein.

213.  This claim is brought for the California Plaintiffs and California Website Purchaser Class.

214.  The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* ("CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

215.  Plaintiffs and each member of the California Website Purchaser Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of products on the website to Plaintiffs and the California Website Purchaser Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiffs and the California Website Purchaser Class are "goods" within the meaning of California Civil Code section 1761(a).

216.  Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in

transactions with Plaintiffs and the California Website Purchaser Class which were intended to result in, and did result in, the sale of Defendant's products:

    a.  Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13))

    b.  Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))

    c.  Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7))

    d.  Representing that goods do have characteristics they do not actually have (Cal. Civ. Code § 1770(a)(5))

217.   Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's merchandise was rarely, if ever, offered for sale and/or sold *on the website* at the higher reference prices, let alone in the recent past on a regular basis, (b) the advertised reference prices are not prevailing market prices because, on information and belief, the products were not predominantly offered or sold in the market at the reference prices for a reasonably substantial period of time in the recent past, and/or (c) Defendant falsely represents the products as on sale for limited time when in truth

the sale never expires or is immediately followed by a similar sale.

218.    Regarding sections 1770(a)(9), (7), and (5), Defendant advertised and represented products on the website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standard because, as explained herein, (a) the false reference prices on the website misled and continue to mislead customers into believing (i) the products were previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time in the recent past, and/or (ii) were valued in the market at the advertised "regular" price, and (b) Defendant falsely represents the products as on sale for limited time when in truth the sale never expires or is immediately followed by a similar sale.

219.    In addition, Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the website were not prices at which Defendant's items were listed or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendant's products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale.  Reasonable consumers were likely to be deceived by Defendant's failure to disclose material information.

220.   Plaintiffs and the California Website Purchaser Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the California Website Purchaser Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they did. Plaintiffs and the California Website Purchaser Class's reliance was a substantial factor in causing them harm.

221.   Had the omitted information been disclosed, Plaintiffs and the California Website Purchaser Class reasonably would have been aware of it and behaved differently. Among other things, Plaintiffs and the California Website Purchaser Class would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

222.   Plaintiffs, through counsel, provided notice to Defendant on April 18, 2024 (Timmins) and May 22, 2024 (Culbertson, Gonzalez, and Condon) pursuant to Cal. Civ.  Code § 1782(a) via certified mail, and the 30-day response period has lapsed. Thus, Plaintiffs seek all relief available under the CLRA, including money damages, punitive damages, attorneys' fees, and injunctive relief for themselves and the California Website Purchaser Class.

223.   Plaintiffs and the California Website Purchaser Class are entitled to punitive or exemplary damages. Defendant, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the

rights of Plaintiffs and the California Website Purchaser Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions were fraudulent because Defendant intended to and did deceive and injure Plaintiffs and the California Website Purchaser Class. Based on the allegations above, Defendant's conduct was made with malice because Defendant acted with the intent to and did cause injury to Plaintiffs and the California Website Purchaser Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiffs and the California Website Purchaser Class.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA**
**CONSUMER LEGAL REMEDIES ACT (CLRA)**
**CAL. CIV. CODE § 1750, et seq.**
**(On Behalf of the California In-Store Purchaser Class)**

224.   Plaintiffs restate paragraphs 1 through 118 and 119 through 124 as if set forth herein.

225.   This claim is brought for Plaintiff Condon and the California In-Store Purchaser Class.

226.   The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* ("CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §

1770(a).

227.  Plaintiff and each member of the California In-Store Purchaser Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of products to Plaintiff and the California In-Store Purchaser Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the California In-Store Purchaser Class are "goods" within the meaning of California Civil Code section 1761(a).

228.  Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the California In-Store Purchaser Class which were intended to result in, and did result in, the sale of Defendant's products:

   e.  Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13))

   f.  Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))

   g.  Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7))

   h.  Representing that goods do have characteristics they do not actually have (Cal. Civ. Code § 1770(a)(5))

229.   Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's merchandise was rarely, if ever, offered for sale or sold at Home Depot at the higher reference prices, let alone in the recent past on a regular basis, (b) the advertised reference prices are not prevailing market prices because, on information and belief, the products were not predominantly offered or sold in the market at the reference prices for a reasonably substantial period of time in the recent past, and/or (c) Defendant falsely represents the products as on sale for limited time when in truth the sale never expires or is immediately followed by a similar sale.

230.   Regarding sections 1770(a)(9), (7), and (5), Defendant advertised and represented products on the website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standard because, as explained herein, (a) the false reference prices misled and continue to mislead customers into believing (i) the products were previously offered for sale and/or sold at Home Depot at the higher reference prices on a regular basis for a reasonably substantial period of time in the recent past, and/or (ii) were valued in the market at the advertised "regular" price, and (b) Defendant falsely represents the products as on sale for limited time when in truth the sale never expires or is immediately followed by a similar sale.

231.   In addition, Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices were not prices at which Defendant's items were listed or sold at Home Depot in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendant's products are typically not offered or sold at Home Depot (and/or in the marketplace) at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale. Reasonable consumers were likely to be deceived by Defendant's failure to disclose material information.

232.   Plaintiff and the California In-Store Purchaser Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the California In-Store Purchaser Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they did. Plaintiff and the California In-Store Purchaser Class's reliance was a substantial factor in causing them harm.

233.   Had the omitted information been disclosed, Plaintiff and the California In-Store Purchaser Class reasonably would have been aware of it and behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

234.    Plaintiff, through counsel, provided notice to Defendant on May 22, 2024 pursuant to Cal. Civ.  Code § 1782(a) via certified mail, and the 30-day response period has lapsed. Thus, Plaintiff seeks all relief available under the CLRA, including money damages, punitive damages, attorneys' fees, and injunctive relief for herself and the California In-Store Purchaser Class.

235.    Plaintiff and the California In-Store Purchaser Class are entitled to punitive or exemplary damages. Defendant, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the California In-Store Purchaser Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions were fraudulent because Defendant intended to and did deceive and injure Plaintiff and the California In-Store Purchaser Class. Based on the allegations above, Defendant's conduct was made with malice because Defendant acted with the intent to and did cause injury to Plaintiff and the California In-Store Purchaser Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiff and the California In-Store Purchaser Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Nationwide Class, California Website Purchaser Class, and California In-Store Purchaser Class, respectfully pray for following relief:

a.  Certification of this case as a class action on behalf of the proposed Class defined above, appointment of Plaintiffs as class representatives, and appointment of their counsel as class counsel;

b.  An award to Plaintiffs and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Defendant obtained from Plaintiffs and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c.  An injunction ordering Defendant to cease the false advertising and unfair business practices complained of herein;

d.  An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

e.  An award of nominal, punitive, exemplary, and statutory damages where available;

f.  Reasonable costs and attorneys' fees;

g.  Pre- and post-judgment interest, to the extent allowable; and

h.  For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the proposed Class, demand a trial by jury for all claims so triable.

Dated:  February 21, 2025

Respectfully submitted,

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Tel: 770-227-6375
ctribble@barneslawgroup.com

Alexander E. Wolf (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060
awolf@milberg.com

Jonathan M. Streisfeld (*pro hac vice*)
Kristen Lake Cardoso (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
streisfeld@kolawyers.com

Marshal J. Hoda (*pro hac vice*)
**THE HODA LAW FIRM, PLLC**
12333 Sowden Road
Suite B, PMB 51811
Houston, TX 77080
Tel: 832-848-0036
marshal@thehodalawfirm.com

Jonathan Shub (*pro hac vice*)
Samantha E. Holbrook (*pro hac vice*)
**SHUB JOHNS & HOLBROOK
LLP**
Four Tower Bridge

200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: 610-477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

***Counsel for Plaintiffs and the Proposed
Classes***

**APPENDIX 1**

| Product 1: GE 25.3 cu. ft. Side by Side Refrigerator in Fingerprint Resistant Stainless Steel, Standard Depth | | |
|---|---|---|
| *Date* | *Discount Price* | *Strikethrough Price* |
| 7/8/2024 | $1,098.00 | $1799.00 |
| 3/21/2024 | $998.00 | $1799.00 |
| 12/25/2023 | $1,198.00 | $1799.00 |
| 12/19/2023 | $1,198.00 | $1799.00 |
| 12/13/2023 | $1,198.00 | $1799.00 |
| 12/3/2023 | $1,198.00 | $1799.00 |
| 10/31/2023 | $1,198.00 | $1799.00 |
| 10/23/2023 | $1,198.00 | $1799.00 |
| 10/14/2023 | $1,198.00 | $1799.00 |
| 9/29/2023 | $1,198.00 | $1799.00 |
| 9/22/2023 | $1,198.00 | $1799.00 |
| 9/5/2023 | $1,198.00 | $1799.00 |
| 8/21/2023 | $1,198.00 | $1799.00 |
| 7/31/2023 | $1,198.00 | $1799.00 |
| 7/24/2023 | $1,198.00 | $1799.00 |
| 01/15/2023 | $1,348.00 | $1549.00 |
| 11/10/2022 | $1,198.00 | $1799.00 |

| Product 2: Samsung 4.5 cu. ft. High-Efficiency Front Load Washer with Self-Clean+ in Brushed Black | | |
|---|---|---|
| *Date* | *Discount Price* | *Strikethrough Price* |
| 7/8/2024 | $598.00 | $999.00 |
| 3/18/2024 | $648.00 | $999.00 |
| 1/20/2024 | $648.00 | $999.00 |
| 12/25/2023 | $628.00 | $999.00 |
| 12/12/2023 | $628.00 | $999.00 |
| 12/5/2023 | $628.00 | $999.00 |
| 11/29/2023 | $548.00 | $999.00 |
| 11/22/2023 | $598.00 | $999.00 |
| 11/15/2023 | $628.00 | $999.00 |
| 11/8/2023 | $628.00 | $999.00 |
| 10/17/2023 | $628.00 | $999.00 |
| 10/10/2023 | $628.00 | $999.00 |
| 10/3/2023 | $628.00 | $999.00 |
| 9/28/2023 | $628.00 | $999.00 |
| 9/21/2023 | $628.00 | $999.00 |
| 9/14/2023 | $628.00 | $999.00 |
| 9/7/2023 | $628.00 | $999.00 |
| 04/19/2023 | $678.00 | $999.00 |
| 11/10/2022 | $648.00 | $999.00 |

| **Product 3: Whirlpool 24 in. Fingerprint Resistant Stainless Steel Top Control Dishwasher** | | |
|---|---|---|
| *Date* | *Discount Price* | *Strikethrough Price* |
| 7/8/2024 | $458.00 | $679.00 |
| 4/10/2024 | $448.00 | $679.00 |
| 1/20/2024 | $498.00 | $679.00 |
| 12/27/2023 | $611.00 | $829.00 |
| 12/19/2023 | $448.00 | $829.00 |
| 12/12/2023 | $448.00 | $829.00 |
| 12/5/2023 | $398.00 | $829.00 |
| 11/28/2023 | $398.00 | $829.00 |
| 11/21/2023 | $398.00 | $829.00 |
| 11/14/2023 | $398.00 | $829.00 |
| 11/7/2023 | $398.00 | $829.00 |
| 10/31/2023 | $398.00 | $829.00 |
| 12/12/2022 | $548.00 | $679.00 |
| 10/05/2022 | $578.00 | $679.00 |

| **Product 4: Whirlpool 1.7 cu. ft. Over the Range Microwave in Stainless Steel with Electronic Touch Controls** | | |
|---|---|---|
| *Date* | *Discount Price* | *Strikethrough Price* |
| 7/8/2024 | $198.00 | $399.00 |
| 4/19/2024 | $198.00 | $399.00 |
| 2/24/2024 | $228.00 | $399.00 |
| 12/26/23 | $228.00 | $399.00 |
| 12/19/2023 | $228.00 | $399.00 |
| 12/12/2023 | $198.00 | $399.00 |
| 12/19/2023 | $198.00 | $399.00 |
| 12/5/2023 | $198.00 | $399.00 |
| 11/28/2023 | $198.00 | $399.00 |
| 11/21/2023 | $198.00 | $399.00 |
| 11/14/2023 | $198.00 | $399.00 |
| 11/7/2023 | $198.00 | $399.00 |
| 11/1/2023 | $198.00 | $399.00 |
| 11/25/2022 | $228.00 | $399.00 |
| 10/04/2019 | $228.00 | $319.00 |
| 10/30/2018 | $198.00 | $210.00 |

**Product 5: GE Profile 5.0 cu. ft. High-Efficiency Smart Top Load Washer in Diamond Gray with Microban Technology**

| Date | Discount Price | Strikethrough Price |
|---|---|---|
| 1/18/2024 | $698.00 | $999.00 |
| 12/25/2023 | $698.00 | $999.00 |
| 12/12/2023 | $698.00 | $999.00 |
| 12/5/2023 | $628.00 | $999.00 |
| 11/29/2023 | $628.00 | $999.00 |
| 11/22/2023 | $628.00 | $999.00 |
| 11/15/2023 | $628.00 | $999.00 |
| 11/8/2023 | $628.00 | $999.00 |
| 11/1/2023 | $628.00 | $999.00 |
| 10/19/2023 | $698.00 | $999.00 |
| 10/12/2023 | $698.00 | $999.00 |
| 10/5/2023 | $698.00 | $999.00 |
| 9/28/2023 | $698.00 | $999.00 |
| 9/21/2023 | $698.00 | $999.00 |
| 9/14/2023 | $698.00 | $999.00 |
| 9/7/2023 | $698.00 | $999.00 |
| 8/29/2023 | $698.00 | $999.00 |

| Product 6: GE Profile 36 in. 5 Burner Element Smart Smooth Induction Touch Control Cooktop in Black | | |
|---|---|---|
| *Date* | *Discount Price* | *Strikethrough Price* |
| 7/8/2024 | $598.00 | $2665.00 |
| 1/18/2024 | $698.00 | $2665.00 |
| 12/26/2023 | $2,098.00 | $2665.00 |
| 12/18/2023 | $2,098.00 | $2665.00 |
| 12/11/2023 | $2,098.00 | $2665.00 |
| 12/5/2023 | $1,998.00 | $2665.00 |
| 11/28/2023 | $1,998.00 | $2665.00 |
| 11/21/2023 | $1,998.00 | $2665.00 |
| 11/14/2023 | $1,998.00 | $2665.00 |
| 11/7/2023 | $1,998.00 | $2665.00 |
| 10/31/2023 | $2,098.00 | $2665.00 |
| 7/14/2023 | $1,998.00 | $2665.00 |

| Product 7: GE 30 in. 5.0 cu. ft. Freestanding Gas Range in Stainless Steel with Griddle | | |
|---|---|---|
| *Date* | *Discount Price* | *Strikethrough Price* |
| 4/18/2024 | $698.00 | $949.00 |
| 2/15/2024 | $648.00 | $949.00 |
| 12/25/23 | $648.00 | $849.99 |
| 12/19/2023 | $648.00 | $849.99 |
| 12/12/2023 | $648.00 | $849.99 |
| 12/4/2023 | $648.00 | $849.99 |
| 11/28/2023 | $648.00 | $849.99 |
| 11/21/2023 | $648.00 | $849.99 |
| 11/14/2023 | $648.00 | $849.99 |
| 11/7/2023 | $648.00 | $849.99 |
| 11/1/2023 | $648.00 | $849.99 |
| 9/29/2023 | $648.00 | $849.99 |
| 9/22/2023 | $648.00 | $849.99 |
| 9/15/2023 | $648.00 | $849.99 |
| 9/8/2023 | $648.00 | $849.99 |
| 9/1/2023 | $648.00 | $849.99 |
| 8/25/2023 | $648.00 | $849.99 |

**Product 8: LG 24 in. Stainless Steel Front Control Dishwasher with QuadWash, 3rd Rack & Dynamic Dry, 48 dBA**

| Date | Discount Price | Strikethrough Price |
|---|---|---|
| 2/23/2024 | $548.00 | $849.00 |
| 12/26/23 | $598.00 | $849.00 |
| 12/19/2023 | $598.00 | $849.00 |
| 12/12/2023 | $548.00 | $849.00 |
| 12/6/2023 | $548.00 | $849.00 |
| 11/29/2023 | $548.00 | $849.00 |
| 11/21/2023 | $548.00 | $849.00 |
| 11/15/2023 | $548.00 | $849.00 |
| 11/9/2023 | $548.00 | $849.00 |
| 11/1/2023 | $548.00 | $849.00 |
| 05/12/2023 | $548.00 | $849.00 |

## APPENDIX 2

**Product 1: 25.3 cu. ft. Side by Side Refrigerator in Fingerprint Resistant Stainless Steel, Standard Depth**

**Pricing as of: 7/8/2024**

| Home Depot Reference Price | Best Buy Offering Price | Lowe's Offering Price | Walmart Offering Price |
|---|---|---|---|
| $1,799.00 | $1,099.99 | $1,099.99 | $1,098.00 |

**Product 2: Samsung 4.5 cu. ft. High-Efficiency Front Load Washer with Self-Clean+ in Brushed Black**

**Pricing as of: 7/8/2024**

| Home Depot Reference Price | Best Buy Offering Price | Lowe's Offering Price | Walmart Offering Price |
|---|---|---|---|
| $999.99 | $629.99 | $628.00 | $624.00 |

**Product 3: Whirlpool 24 in. Fingerprint Resistant Stainless Steel Top Control Dishwasher**

**Pricing as of: 7/8/2024**

| Home Depot Reference Price | Best Buy Offering Price | Lowe's Offering Price | Walmart Offering Price |
|---|---|---|---|
| $999.99 | $629.99 | $628.00 | $624.00 |

**Product 4: Whirlpool 1.7 cu. ft. Over the Range Microwave in Stainless Steel with Electronic Touch Controls**

**Pricing as of: 7/8/2024**

| Home Depot Reference Price | Best Buy Offering Price | Lowe's Offering Price | Walmart Offering Price |
|---|---|---|---|

| $399.00 | $199.99 | $199.00 | $285.03 |
|---------|---------|---------|---------|

**Product 5: GE Profile 36 in. 5 Burner Element Smart Smooth Induction Touch Control Cooktop in Black**

**Pricing as of: 7/8/2024**

| *Home Depot Reference Price* | *Best Buy Offering Price* | *Lowe's Offering Price* | |
|---|---|---|---|
| $2,777.00 | $2,299.99 | $2,299.00 | |

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

Counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1(B).

Dated:  February 21, 2025.

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

Dated:  February 21, 2025.

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Tel: 770-227-6375
ctribble@barneslawgroup.com