## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ERIC BERGER, JASON LONDRIGAN, LACEY TIMMINS, KEVIN CULBERTSON, MARIA GONZALEZ, and GRACE CONDON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:24-cv-01435-VMC |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.    INTRODUCTION. ...................................................................................1

II.    BACKGROUND. ....................................................................................2

III.    ARGUMENT. .........................................................................................5

    A.    CA Plaintiffs Timmins, Culbertson, and Gonzalez State Claims for Violation of the UCL (Fraud), FAL (Section 17500), and CLRA. ..............................................................................................5

        1.    Deceptive Regular and Former Prices. ......................................5

        2.    CA Plaintiffs Plausibly Allege HD's "Regular" Prices are not the Prevailing Market Prices. ..............................................9

    B.    CA Plaintiffs Timmins, Culbertson, and Gonzalez State Claims under the UCL's Unfair and Unlawful Prongs. ...................................14

    C.    CA Plaintiffs Timmins, Culbertson, and Gonzalez May Pursue California Law Claims. .................................................................15

        1.    California Law Applies to Timmins under California's Choice of Law Rules. .............................................................15

        2.    Alternatively, Timmins, Culbertson, and Gonzalez Have Not Assented to the Georgia Choice of Law Provision. ...........18

    D.    The Plaintiffs Allege "Price Premium" Injury. ...........................20

    E.    Plaintiff Condon States Claims Under the UCL, FAL and CLRA. ..............................................................................................22

    F.    The Plaintiffs Plead Justifiable Reliance. ...........................................23

    G.    The Plaintiffs Allege False and Misleading Statements. ....................25

IV.    CONCLUSION. .........................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Am. Online, Inc. v. Superior Ct.*,
   90 Cal. App. 4th 1 (2001) ................................................................ 17

*Amin v. Mercedes-Benz USA, LLC*,
   301 F. Supp. 3d 1277 (N.D. Ga. 2018) ........................................... 24

*Bayol v. Zipcar, Inc.*,
   2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) ................................ 16

*Belcastro v. Burberry Ltd.*,
   2017 WL 744596 (S.D.N.Y. Feb. 23, 2017) .................................... 22

*Binder v. Premium Brands Opco LLC*,
   2024 WL 2978506 (S.D.N.Y. June 11, 2024) ................................. 22

*Byung Ho Cheoun v. Infinite Energy*,
   2009 WL 10690518 (N.D. Ga. July 1, 2009) .................................. 24

*Calcagno v. Kipling Apparel Corp*,
   2024 WL 3261205 (S.D. Cal. July 1, 2024) .................................... 14

*California." Vrugtman v. It's Just Lunch Int'l LLC*,
   2021 WL 4979443 (C.D. Cal. Sept. 24, 2021) ......................... 16, 18

*Cardenas v. Toyota Motor Corp.*,
   2021 WL 5811741 (S.D. Fla. 2021) ................................................ 21

*Carder v. Graco Children's Prods., Inc.*,
   558 F. Supp. 3d 1290 (N.D. Ga. 2021) .......................................... 21

*Carvalho v. HP, Inc.*,
   2022 WL 2290595 (N.D. Cal. June 24, 2022) ..................... 9, 23, 24

*Chabolla v. ClassPass Inc.*,
   129 F.4th 1147 (9th Cir. 2025) ...................................................... 20

*Chester v. TJX Companies, Inc.*,
    2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) .......................................... 2, 3, 4

*Cody v. SoulCycle Inc.*,
    2016 WL 4771392 (C.D. Cal. Jan. 11, 2016) ........................................... 15, 16

*Conservit, Inc. v. Glob. Mill Supply, Inc.*,
    2019 WL 13207586 (N.D. Ga. Nov. 12, 2019) ............................................. 23

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ..................................................................... 18

*Freeman v. Indochino Apparel, Inc.*,
    443 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................... 7, 14

*Gomez v. Kohl's Corp.*,
    2024 WL 3363216 (W.D. Wis. July 9, 2024) ............................................... 22

*Hill v. Morehouse Med. Assocs., Inc.*,
    2003 WL 22019936 (11th Cir. Aug. 15, 2003) ............................................ 24

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ....................................................................... 2

*In re Evenflo Company Inc., Marketing, Sales Practices and Products Liability Litig.*,
    54 F.4th 28 (1st Cir. 2022) ................................................................. 20-21, 21

*Inga v. Bellacor.com, Inc.*,
    2020 WL 5769080 (C.D. Cal. July 17, 2020) ......................................... 6, 9, 13

*Irvine v. Kate Spade & Co.*,
    2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ............................................. 22

*Johnson v. GAPVT Motors, Inc.*,
    292 Ga. App. 79 (2008) ............................................................................... 20

*Johnson v. Jos. A. Bank Clothiers, Inc.*,
    2014 WL 4129576 (S.D. Ohio Aug. 19, 2014) ............................................. 22

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) .......................................................................... 22

*Knapp v. Art.com, Inc.*,
  2016 WL 3268995 (N.D. Cal. June 15, 2016) ................................. 6-7, 9, 10, 11

*Leigh-Pink v. Rio Props., LLC*,
  512 P.3d 322 (Nev. 2022) ............................................................................... 22

*Lloyd v. Navy Fed. Cred. Union*,
  2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) ........................................... 16, 18

*Lopez v. Dave, Inc.*,
  2023 WL 8594393 (9th Cir. Dec. 12, 2023) ............................................ 18, 19

*Mitchell v. NY & Co Ecomm LLC*,
  2024 WL 1328333 (C.D. Cal. Mar. 26, 2024) ............................................. 7, 8

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ..................................................................... 5, 9

*Nalley v. Gen. Motors LLC*,
  2022 WL 18459646 (N.D. Ga. Aug. 30, 2022) ............................................... 24

*People v. Overstock.com, Inc.*,
  12 Cal. App. 5th 1064 (2017) ........................................................................ 14

*People v. Superior Ct.*
  (J.C. Penney Corp.), 34 Cal. App. 5th 376 (2019) ....................... 10, 11-12, 14

*Purcelley v. Ekster Inc.*,
  2024 WL 2107710 (C.D. Cal. Apr. 4, 2024) ...................................... 8, 12, 23

*Real v. Y.M.I. Jeanswear, Inc.*,
  2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) ............................................ 7, 13

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ........................................................................... 5

*Robey v. SPARC Grp. LLC*,
    311 A.3d 463 (2024) ....................................................................... 22

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 F. App'x 564 (9th Cir. 2017) ............................................... 5, 15

*Rubio v. Cap. One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ....................................................... 14

*Sawyer v. Bill Me Later, Inc.*,
    2010 WL 11492736 (C.D. Cal. Dec. 14, 2010) ............................... 17

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
    666 F. Supp. 3d 1089 (C.D. Cal. 2023) .................................... 18, 19

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017) .............................................................. 22

*Sheil v. Brooklyn Bedding LLC*,
    2025 WL 1119924 (April 1, 2025) ........................................... 11, 20

*Shimono v. Harbor Freight Tools USA, Inc.*,
    2016 WL 6238483 (C.D. Cal. Oct. 24, 2016) ........................... 13, 23

*Tiismann v. Linda Martin Homes Corp.*,
    281 Ga. 137 (2006) ........................................................................ 24

*United States v. MyLife.com, Inc.*,
    499 F. Supp. 3d 757 (C.D. Cal. 2020) ............................................ 13

*Verthelyi v. PennyMac Mortg.*,
    2025 WL 841878 (C.D. Cal. Feb. 26, 2025) ............................. 17, 18

*Vizcarra v. Michaels Stores, Inc.*,
    2024 WL 64747 (N.D. Cal. Jan. 5, 2024) ....................... 6, 9, 10, 11

*Vue v. Pentagon Fed. Credit Union*,
    2023 WL 6387174 (E.D. Cal. Sept. 29, 2023) ................................ 17

*Zeeman v. Black*,
  156 Ga. App. 82 (1980) .................................................................. 24

**Statutes**

Cal. Bus. & Prof. Code § 17208 ...................................................... 17

Cal. Bus. & Prof. Code § 17501 ...................................................... 10

Cal. Civ. Code § 1781 ................................................................... 17

Cal. Civ. Code §§ 1780 ................................................................. 17

Cal. Code of Civ. Proc. § 338 ........................................................ 17

O.C.G.A. § 10-1- 393 ..................................................................... 4

O.C.G.A. §§ 10-1-399, 10-1-401 ............................................. 17, 18

**Other Authorities**

16 C.F.R. § 233.1 ........................................................... 4, 8, 9, 15

Fed. R. Civ. P. 9 ........................................................................ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

Plaintiffs Eric Berger, Jason Londrigan, Lacey Timmins, Kevin Culbertson, Maria Gonzalez, and Grace Condon (collectively, "Plaintiffs") bring this action against Defendant Home Depot U.S.A., Inc. ("HD") on behalf of all persons who purchased items from HomeDepot.com or its California stores under the guise of false discounts. The products are offered at supposedly reduced "sale" prices from higher former and regular prices ("reference prices") when, in truth, they are regularly on sale. Plaintiffs' Consolidated Class Action Complaint ("CCAC"), ECF No. 40, details how reasonable consumers were duped into purchases by HD's fictitious discounting scheme designed to create the illusion of a bargain.

In response, HD makes deficient legal arguments that mischaracterize the CCAC. The Motion to Dismiss ("Motion") fundamentally misapplies federal pleading standards. Plaintiffs need not *prove* their claims at the pleading stage. Plaintiffs plausibly allege falsity, deception, and predicate violations of state and federal law based on HD's fictitious pricing scheme.[1] A litany of prior cases, largely ignored by HD, have squarely rejected HD's arguments. And HD's factual disagreement is no basis for dismissal at the pleading stage, let alone to conclude no

---

[1] Before she agreed to transfer and consolidation, HD answered the complaint filed by Plaintiff Timmins in California, based on the same California state law claims for the same putative class.

reasonable consumer could be misled as a matter of law. In brief, "price advertisements matter." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). "There is a reason" companies "use reference pricing: it makes consumers think they are getting a deal." *Chester v. TJX Companies, Inc*., 2016 WL 4414768, at *11 (C.D. Cal. Aug. 18, 2016). "When these reference prices are misleading, the consumer suffers an obvious economic injury." *Id.* (cleaned up). "Anyone who says differently is selling something." *Id.*

## II.    BACKGROUND.

HD is the self-described "largest home improvement retailer." CCAC ¶ 18. On HomeDepot.com, supposed markdowns are represented by a "crossed-out" reference price next to the sale price, and "Save $__" or "Save __%." *Id.* ¶ 22.



*Id*. In California stores, HD similarly advertises a "was" price and adjacent "sale" price on signs. *Id.* ¶ 78. And according to HD's FAQ webpage entitled "About Shopping Online At The Home Depot," online prices only "vary occasionally" from local store prices. *Id.* ¶ 29.

HD misleads anyone visiting HD's website and who buys an item on "sale" from a stricken price because that item has not been offered or sold *on the website*, in the recent past, and, for a substantial time, at the former or reference price. *Id.* ¶¶

2-3. Consumers who buy "discounted" products from HD's California stores are misled for similar reasons—the products have not been offered by HD at the reference price in the recent past (or at all). *Id.* ¶¶ 29, 82. And reasonable consumers interpret HD's advertisements to mean that, if they buy now, they will receive a price reduction from HD's ordinary selling price. *Id.* ¶ 5.

Additionally, and in the alternative, reasonable consumers expected a price reduction from the products' market value. *Id.* But the advertised reference prices are not the prevailing market prices, either. *Id.* ¶¶ 31-37.

Academic research confirms deceptive advertising through false reference pricing is intended to—and does—influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money on and purchase items they otherwise would not have and/or purchase products from a specific retailer. *Id.* ¶¶ 85-92. Importantly, the cumulative effect of these additional purchases is an artificial demand curve shift resulting in increased prices all consumers pay. *Id.* ¶¶ 6, 94-96. So, Plaintiffs and Class Members paid an objective price premium (difference between the price paid and value received). *Id.* Further, HD's misconduct means consumers, including Plaintiffs, did not get the benefit of their bargain—they were promised goods valued at the reference price while paying a lower bargain price, but the goods are not worth the reference price when they are regularly sold at the alleged discount. *Id.* ¶ 93; *accord id.* ¶¶ 31-37.

The CCAC meets all federal pleading requirements: it alleges representative examples of deceptive pricing (including historical prices); identifies Plaintiffs' products and purchase dates; and explains why HD's advertising is misleading and unlawful. *E.g., id.* ¶¶ 21-27 (historical pricing), 31-37 (marketplace pricing), 38-84 (Plaintiffs' purchases), 97-99 (discussing 16 C.F.R. § 233.1).

Plaintiffs Berger, Londrigan, Timmins, Culbertson, and Gonzalez seek to represent a national class of HomeDepot.com customers deceived by the fake sale scheme. *Id.* ¶¶ 101, 126. The "Nationwide Website Purchaser Class" claims are brought under the Georgia Fair Business Practice Act ("FBPA"), O.C.G.A. § 10-1-393, et. seq. CCAC ¶¶ 125-137. Alternatively, California Plaintiffs Timmins, Culbertson, and Gonzalez ("CA Plaintiffs") made their purchases on HD's website and seek to represent the California Website Purchaser Class.[2] Plaintiff Condon made her purchase in-store in California and seeks to represent the California In-Store Purchaser Class. CCAC ¶¶ 101, 162, 199, 225. The California Website Purchaser Class and the California In-Store Purchaser Class both bring claims under the California Unfair Competition Law ("UCL"); California False Advertising Law ("FAL"); and California Consumers Legal Remedies Act ("CLRA"). CCAC ¶¶ 138-235.

---

[2] Plaintiffs plead choice of law in the alternative. CCAC ¶¶ 117-118 (Georgia law applies to the Nationwide Website Purchaser Class claims, and, alternatively, California law applies to the California Website Purchaser Class and California In-Store Purchaser Class).

III.    **ARGUMENT.**

A.    **CA Plaintiffs Timmins, Culbertson, and Gonzalez State Claims for Violation of the UCL (Fraud), FAL (Section 17500), and CLRA.**

The UCL (fraud), FAL (Section 17500), and CLRA claims are judged by the "reasonable consumer standard." Under this standard, conduct is misleading if "members of the public are likely to be deceived." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). California laws "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (reversing dismissal of deceptive pricing case). It is a "'rare situation in which granting a motion to dismiss is appropriate.'" *Id.*

1.    **Deceptive Regular and Former Prices.**

At the outset, HD largely ignores Plaintiffs' deceptive former pricing claims. It claims Plaintiffs "must" allege the reference prices do "not accurately reflect the prevailing market prices of the same or similar products sold by third-party retailers" because "Plaintiffs do not allege that HD is the exclusive retailer of the products they purchased." Mot. 18-19. Not so. HD's formulation overlooks Plaintiffs' first theory—i.e., the reference prices are misleading "former" and "regular" prices

charged by HD *on the website*. Stated differently, (1) reasonable consumers interpret the strikethrough reference prices as HD's own "regular" and "former" prices, and (2) the reference prices are misleading because the "item has not been listed for sale or sold on the website, in the recent past and for a substantial time, at the former price." *E.g.,* CCAC ¶¶ 2, 54 (Timmins), 61 (Culbertson), 71 (Gonzalez), 142-147 (UCL), 194 (FAL), 217-218 (CLRA). None of HD's arguments support dismissal.

First, HD wrongly insists this claim depends on prices charged for the "same or similar" products by other retailers, or on whether HD sold the products exclusively. "Courts have construed strikethrough prices as representing former prices despite '[t]he lack of specific words indicating the regular price.'" *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *4 (N.D. Cal. Jan. 5, 2024). So, "[t]he non-Section 17501 FAL claims, as well as the UCL and CLRA claims, do not necessarily depend on what prices other retailers charge for the products [HD] sells." *Id.* at *5-7. "[Plaintiff] therefore does *not need to allege pricing at other retailers* in order to adequately state a claim that [HD's] own advertising is false, misleading, deceptive, or confusing." *Id.* (emphasis added). *See also, e.g., Inga v. Bellacor.com, Inc.*, 2020 WL 5769080, at *3 (C.D. Cal. July 17, 2020) ("Plaintiff responds that he need not allege facts concerning market prices because he has alleged that the advertisements were misleading as to Defendant's former prices. . . . The Court agrees."); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *4 (N.D. Cal. June 15, 2016)

("Knapp's principal theory of liability appears to be that Art.com does not ordinarily sell its products at the advertised regular prices (in violation of section 17500), not that the advertised regular prices are out of step with prevailing market prices (in violation of section 17501).").

Second, courts have found advertising virtually identical to HD's concerning former prices to be false and misleading. "The placement of a price in strike-through font next to a lower price is reasonably believed to be a former price comparison." *Real v. Y.M.I. Jeanswear, Inc.*, 2017 WL 11675686, at *4 (C.D. Cal. Sept. 1, 2017); *see also Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1115 (N.D. Cal. 2020) (plausible a reasonable consumer would be misled by "struck-through reference prices . . . coupled with representations of 'sale,' 'You save $,' or a percentage 'off'"); *Mitchell v. NY & Co Ecomm LLC*, 2024 WL 1328333, at *1, 5 (C.D. Cal. Mar. 26, 2024) (same).

These principles apply equally here. As in *Vizcarra*, *Knapp*, *Real*, *Freeman*, and *Mitchell*, HD advertises fake and inflated reference prices to deceive customers into falsely believing the sale price is a real discounted bargain price by a "crossed-out" reference price next to the sale price, and "Save $__" or "Save __%". CCAC ¶¶ 22-23. Reasonable consumers believed the false and misleading reference price was the price at which the products were regularly offered on the website, in the recent past. *Id.* ¶¶ 23-24. However, HD almost never sells items on the website at

the reference price, let alone in the recent past. *Id.* ¶¶ 24-25 & Appendix 1.

The Federal Trade Commission's "Former Price Comparison" regulation further supports a finding of deception. 16 C.F.R. § 233.1. "One of the most commonly used forms of bargain advertising is to offer a reduction from the *advertiser's own former price* for an article." *Id.* (emphasis added). "If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison." *Id.* "If, on the other hand, the former price being advertised is not bona fide but fictitious," consumers are misled because "the 'reduced' price is, in reality, probably just the seller's regular price." *Id.*; CCAC ¶¶ 97-99 (citing regulation). To that end, according to the FTC, examples of misleading former prices include without limitation "a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact," or "a price that was . . . not maintained for a reasonable length of time." 16 C.F.R. § 233.1(d); CCAC ¶ 98.

HD relies heavily on *Purcelley v. Ekster Inc.*, 2024 WL 2107710 (C.D. Cal. Apr. 4, 2024). Mot. 18-22. But, there, the claims were dismissed in part because plaintiff purchased a product sold by multiple retailers without alleging how defendant's failure to offer the product at the reference price was misleading. Here, Plaintiffs expressly allege, as reasonable consumers, they understand strikethrough

reference prices to be HD's regular and former prices on the website. *E.g.*, CCAC ¶¶ 2, 23-24. HD's advertising is misleading if it rarely (or never) offered the product at the reference price but led consumers to believe otherwise.

HD's citation to an early motion to dismiss ruling in *Carvalho v. HP, Inc.*, 2022 WL 2290595, at *1, 5 (N.D. Cal. June 24, 2022) (Mot. 18-22), is unhelpful because that defendant's website notified consumers the advertised "strikethrough" prices were just MSRPs, not former prices, such that the defendant's advertisements were not comparing former prices. Here, in contrast, HD advertises its regular prices using strikethrough text and an adjacent "Save $__." CCAC ¶¶ 22-23.

In short, HD's advertising violates the FTC's former price advertising regulation quoted above and in the CCAC, 16 C.F.R. § 233.1; CCAC ¶¶ 97-99, and also violates California law, *Mars Petcare US, Inc.,* 966 F.3d at 1017. HD's argument clashes with the plethora of decisions holding a plaintiff "need not allege facts concerning market prices because he has alleged that the advertisements were misleading as to HD's former prices." *Inga*, 2020 WL 5769080, at *3; *Vizcarra*, 2024 WL 64747 at *5-7; *Knapp*, 2016 WL 3268995, at *4. It is eminently reasonable for a consumer to interpret HD's strikethrough and "% off" advertising as HD's former, regularly charged prices regardless of the others' actual prices.

### 2. CA Plaintiffs Plausibly Allege HD's "Regular" Prices are not the Prevailing Market Prices.

CA Plaintiffs alternatively bring plausible UCL and CLRA claims, alleging

that, if the crossed-out reference price is understood by a reasonable consumer to reflect the product's market price, the reference prices on HD's website are not prevailing market prices. *E.g.,* CCAC ¶¶ 5, 31-37; ¶¶ 142, 147, 157 (UCL); ¶¶ 217-218 (CLRA). They also bring a standalone FAL claim under § 17501, which imposes clear requirements for "former price" advertisements tethered to "prevailing market prices." CCAC. ¶¶ 187-192; *Vizcarra*, 2024 WL 64747, at *5-7 (distinguishing § 17501 from "non-Section 17501 FAL claims"); *Knapp*, 2016 WL 3268995, at *4 (same). Specifically, § 17501 forbids sellers from "advertis[ing] a former price . . . unless the alleged former price was the prevailing market price" in the "*three months*" leading up to the advertisement, in the "locality wherein the advertisement is published." Cal. Bus. & Prof. Code § 17501 (emphasis added). "Prevailing market price" refers to the "retail [price] if the offer is at retail." *Id*. The "three-month period" is a "rolling" period requiring "a daily recalculation." *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 416 n.26 (2019). Fed. R. Civ. P. 9(b) does not always apply to § 17501 because "advertising can be entirely truthful and still violate Section 17501." *Vizcarra*, 2024 WL 64747, at *5 n.4.

Despite the CCAC's robust allegations evidencing HD's advertised reference prices are higher than the actual prices charged by third-party retailers, HD summarily disagrees and wrongly suggests Plaintiff Timmins's (but not Culbertson's

or Gonzalez's claims) should be dismissed on that basis.[3]

First, the CCAC pleads facts regarding the prices charged in the marketplace. "Economic principles dictate that, in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price." CCAC ¶ 34. "Because Defendant consistently sells the products at issue at prices significantly (i.e., 25% or more) lower than its advertised former prices, there is no reasonable basis to believe Defendant consistently sells its products at prices below the prevailing market prices." *Id.* Federal courts consistently find this allegation sufficient. *E.g., Vizcarra*, 2024 WL 64747, at *5-7 ("while a plaintiff must eventually determine the prices charged by other sellers in the market where an item is advertised in order to prove the prevailing market price, they need not identify the actual prices charged by other retailers in order to state a claim. . . . the Court can infer for purposes of the present motion that Michaels would not continually sell products for prices at least 20% less than the market rates at which those products are offered elsewhere."); *Knapp*, 2016 WL 3268995, at *5 (same); *Sheil v. Brooklyn Bedding LLC*, 2025 WL 1119924, at *3-4 (April 1, 2025) (same). The California Court of Appeal agrees. *J.C. Penney*, 34 Cal. App. 5th 376, 416 (2019) ("in competitive markets, the actual prices offered by vendors selling the same item tend

---

[3] Defendant does not argue Plaintiffs Culbertson and Gonzalez fail to allege the advertised reference prices are higher than the prevailing market prices for their purchased products—effectively conceding these examples are sufficient.

to converge on the market price," thus, plaintiffs "state a cognizable theory of liability under section 17501 with respect to the nonexclusive goods").

*Purcelley*, cited by HD (Mot. 21-22), is distinguishable because the court did not have occasion to address this economic principle; plaintiff did not allege or argue it. 2024 WL 2107710, at *5. Thus, Plaintiffs' allegations do not mirror *Purcelley*.

Second, even if the above were insufficient, Plaintiffs allege seven representative examples where HD's advertised *reference prices* far exceeded the *actual prices* charged by other big box retailers. For example, from September 2023 to January 2024, HD advertised a GE Electric Dryer with a $799 reference price and a lower sale price. CCAC ¶ 35. But during that period, competitors like Best Buy and Orville's offered that product for at most $549. *Id.* ¶¶ 35, 62-64. Similarly, in January 2024, HD advertised a GE Dishwasher with an $829 reference price and a lower sale price, but, based on archived copies of various retailers' websites selling the same GE Dishwasher, the GE Dishwasher's prevailing market price was never $829—the highest price was $532. *Id.* ¶¶ 69, 73. Further, the CCAC's Appendix 2 compares the advertised prices for five products on July 8, 2024 at HD, Best Buy, Lowes, and Walmart. For each product, HD's reference price (the supposed prevailing market price) was higher than the third-party retailers' offering price. *Id.*

These representative examples, standing alone, are sufficient to plausibly allege HD's advertised reference prices are higher than the prevailing market prices

for the products at issue. Contrary to HD's assertions, Rule 9(b) does not require extensive historical market pricing allegations for the specific product a plaintiff purchased—representative examples of unpurchased products suffice. For instance, *Shimono v. Harbor Freight Tools USA, Inc.*, 2016 WL 6238483 (C.D. Cal. Oct. 24, 2016), held it sufficient to allege "specific price comparisons between [defendant] and competitors for two products." *Id.*, at *6. The court acknowledged the plaintiff "does not allege that he personally purchased any of the specific products for which he offers examples of more detailed price histories or price comparisons." *Id.* But no authority required otherwise where, as here, the plaintiff alleged a "fictitious discount pricing 'scheme.'" *Id. See also Y.M.I. Jeanswear, Inc.*, 2017 WL 11675686, at *4–5 (allegations "tracking ten items over a three-month period," none of which the plaintiff purchased, held sufficient); *Inga*, 2020 WL 5769080, at *1 (investigation tracking "several" products held sufficient).

Simply put, it is a fact question as to whether Defendant or third-party retailers regularly, if ever, offer products at or above Defendant's reference prices. Rule 9(b) "does not require absolute particularity or a recital of the evidence." *United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 757, 761 (C.D. Cal. 2020).

Third, HD wrongly argues the "prevailing market price" must take into account other sellers of "similar products" or "similar goods." Mot. 19, 22. The prices charged by other retailers for similar products have no bearing on the

plausibility of Plaintiffs' claims. *Indochino Apparel, Inc.*, 443 F. Supp. 3d at 1111-12 (rejecting argument that "reasonable consumers would understand that the struck-through prices were comparisons to former prices of *substantially similar* items sold by another retailer") (emphasis in original); *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1080-81 (2017) ("Overstock's use of reference prices from nonidentical products was likely to mislead consumers"). HD's position is also inconsistent with FAL § 17501. Where, as here "the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of that item only." *J.C. Penney*, 34 Cal. App. 5th at 412.

In sum, Plaintiffs plausibly allege the reference prices were inconsistent with market prices as a matter of economics and through representative examples.

**B.    CA Plaintiffs Timmins, Culbertson, and Gonzalez State Claims under the UCL's Unfair and Unlawful Prongs.**

HD's Motion does not discuss the "unfair" and "unlawful" UCL claims.

*Unfair.* A UCL unfairness claim is well-pled when the public harm from the business practice is greater than the utility of the practice. *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010). Here, there is no utility in mischaracterizing historical pricing and value. CCAC ¶¶ 151-154. Thus, Plaintiffs state a claim for unfair conduct. *Calcagno v. Kipling Apparel Corp*, 2024 WL 3261205, at *9 (S.D. Cal. July 1, 2024) (sustaining deceptive reference pricing claim).

***Unlawful.*** "Virtually any state, federal or local law can serve as the predicate for an action under [the UCL]." *Rubenstein*, 687 F. App'x at 567 (9th Cir. 2017) (UCL claim may be predicated on FTC pricing regulations violations). Plaintiffs' UCL unlawful claim is based on HD's violations of 16 C.F.R. § 233.1 and FAL § 17501 discussed above. CCAC ¶ 157.

### C.    CA Plaintiffs Timmins, Culbertson, and Gonzalez May Pursue California Law Claims.

#### 1.    California Law Applies to Timmins under California's Choice of Law Rules.

In transferring Timmins's action to this Court, the parties stipulated that "California's choice-of-law rules continue to apply to the California claims and California class asserted in Timmins to the same extent they would were this case to have remained in the Eastern District of California." Mot. 23 n.10. California law applies to Timmins and HD does not argue otherwise. *Id.*

California courts apply a multi-step assessment in considering enforcement of contractual choice of law clauses. First, the court determines "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Cody v. SoulCycle Inc.*, 2016 WL 4771392, at *8 (C.D. Cal. Jan. 11, 2016). "If . . . either test is met," courts "next determine whether the chosen state's law is contrary to a fundamental policy of California." *Id.* If so, courts "then determine whether California has a materially greater interest than the chosen state in the determination of the particular

issue." *Id.* And "[i]f California has a materially greater interest . . . the choice of law shall not be enforced." *Id.* Here, application of this test favors California law.

Timmins pleads statutory CLRA claims. The "CLRA has an anti-waiver provision, which reads '[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void.'" *Bayol v. Zipcar, Inc.*, 2014 WL 4793935, at *4 (N.D. Cal. Sept. 25, 2014) (quoting Cal. Civ. Code § 1751). Her UCL and FAL claims are also well-pled. Each statute "reflects fundamental policies of California." *Vrugtman v. It's Just Lunch Int'l LLC*, 2021 WL 4979443, at *7-10 (C.D. Cal. Sept. 24, 2021) (applying UCL and FAL despite Nevada law provision); *Lloyd v. Navy Fed. Cred. Union*, 2018 WL 1757609, at *5 (S.D. Cal. Apr. 12, 2018) ("CLRA and UCL reflect multiple [California] fundamental policies . . . aimed at protecting California consumers"). Thus, California courts do not apply another state's laws on Californians if doing so would prejudice consumers in contravention of California public policy. *Bayol*, 2014 WL 4793935, at *4-5.

Here, material conflicts exist between California and Georgia law, and application of Georgia law would contravene California's public policy.

<u>First</u>, if HD is correct that—unlike Georgia—"California is an outlier in allowing some reference price cases to survive dismissal on the grounds that a disappointed bargain hunter may have suffered damages," Mot. 15 n.7, California's choice of law principles require application of California law. Waiving an available

claim directly conflicts with California's public policy. *Sawyer v. Bill Me Later, Inc.*, 2010 WL 11492736, at *4 (C.D. Cal. Dec. 14, 2010) ("fundamental policy of California is to ensure that its citizens can recover monetary relief in violation of the UCL"); *Verthelyi v. PennyMac Mortg.*, 2025 WL 841878, at *6 (C.D. Cal. Feb. 26, 2025) (applying UCL despite Maryland choice of law clause).

Second, the CLRA, UCL, and FAL afford remedies that are not available under the FBPA. The CLRA has a $1,000 floor for all class action damages awards and a three-year statute of limitations. Cal. Civ. Code §§ 1780(a)(1), 1784. The UCL and FAL have four- and three-year statutes of limitations, respectively. Cal. Bus. & Prof. Code § 17208; Cal. Code of Civ. Proc. § 338(a). The FBPA, however, says nothing about damage minimums and has a shorter two-year statute of limitations. O.C.G.A. §§ 10-1-399, 10-1-401(a)(1). These statutory protections would be waived if Georgia law applied. *See Am. Online, Inc. v. Superior Ct.*, 90 Cal. App. 4th 1, 18 (2001) (refusing to enforce Virginia forum selection and choice of law provision in part because Virginia law had a "shorter period of limitations").

Third, "Both the UCL and CLRA are meant to protect consumers by allowing them to bring class actions and expand the available remedies, and they have similar public policy considerations." *Vue v. Pentagon Fed. Credit Union*, 2023 WL 6387174, at *5 (E.D. Cal. Sept. 29, 2023). Indeed, the CLRA expressly authorizes class action claims. Cal. Civ. Code § 1781(a), (b). But in stark contrast to California's

policy, the Georgia legislature barred FBPA class actions. O.C.G.A. § 10-1-399(a) (action "in a representative capacity" disallowed). This, too, conflicts with California law. *Lloyd v. Navy Fed. Credit Union*, 2018 WL 1757609, at *5 (S.D. Cal. Apr. 12, 2018) (conflict because "CLRA and UCL . . . permit consumers to obtain relief via class action, whereas Virginia's consumer protection laws do not."); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) (same).

Fourth, "California has a stronger interest in protecting its consumers through its chosen mechanisms." *Verthelyi v. PennyMac Mortg. Inv. Tr.*, 2025 WL 841878, at *7 (C.D. Cal. Feb. 26, 2025). *See also Vrugtman*, 2021 WL 4979443, at *7 ("While Nevada is where [defendant] resides and the choice-of-law clause in the contracts, these interests are not as great as California's interest in protecting its consumers").

### 2. Alternatively, Timmins, Culbertson, and Gonzalez Have Not Assented to the Georgia Choice of Law Provision.

To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Lopez v. Dave, Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023). In electronic consumer transactions, mutual assent turns on whether the consumer had proper notice of a merchant's terms of service. *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089 (C.D. Cal. 2023) is illustrative. There, defendant's "sign up" webpage "did not provide reasonably conspicuous notice of the terms and conditions." *Id.* at 1096. The page contained four fillable fields for the user to input his or her email

address, mobile phone number, and password. *Id.* Underneath those fields was a purple button with white text stating, "Sign Up." *Id.* Below that in black underlined text was the line, "Already have an account? Sign in." *Id.* Finally, below that, smaller and lighter underlined text stated, "By creating an account, you agree to the Amuse Privacy Policy and Terms of Use." *Id.* This notice was held insufficient because the text stating the user agrees to the terms (1) is in a smaller font than both the "Sign Up" button and the line for accountholders to "Sign In," (2) merely uses underlined hyperlinks, and (3) is the "least conspicuous part of the webpage." *Id.* at 1096-97.

Here, as the CCAC shows, notice of HD's My Account Terms and Conditions and Terms of Use is not reasonably conspicuous. On the "Create an Account" page consumers see after clicking "Register," HD states that "[b]y selecting 'Create an Account' you are agreeing to the <u>Pro Xtra Terms and Conditions</u>, <u>Privacy and Security Statement</u>, & <u>My Account Terms and Conditions</u>," and includes hyperlinks to these terms. CCAC ¶ 123. The notice appears at the bottom of the page—not directly above or below the "Create an Account" button—and is separated by the "Already Have an Account? Sign In" hyperlink (which HD chose to emphasize in blue). *Id.* Critically, the hyperlinks to the various terms are smaller than the surrounding text, and are not bold, brightly colored, or in a different color than the adjacent black text. *Id.* Instead, as courts have reasoned, mere underlined hyperlinks like HD's are not reasonably conspicuous. *Dave, Inc.*, 2023 WL 8594393, at *1;

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025) ("[s]imply underscoring words or phrases . . . will often be insufficient.").

### D.    The Plaintiffs Allege "Price Premium" Injury.

The Plaintiffs all suffered actual FBPA injuries by paying a "price premium" for HD's falsely advertised products. The economic logic of these damages is straightforward. Plaintiffs allege HD's deceptive pricing scheme led to higher consumer demand for the products purchased, resulting in artificially inflated prices. CCAC ¶¶ 6, 7, 93-96, 135-36. Their FBPA injury is the difference between what class members actually paid (the "as-is" world) and the market price for the products they purchased if HD had not engaged in the unlawful pricing scheme at issue (the "but-for" world). *Id*. ¶ 136. *Sheil*, 2025 WL 1119924, at *3 ("Sheil [adequately] alleged he paid a price premium due to the 'artificially increase[d] consumer demand' from misleading discounts on an allegedly inaccurate reference prices.").

Price premium damages constitute actual FBPA damages, *Johnson v. GAPVT Motors*, Inc., 292 Ga. App. 79, 85 (2008), which HD does not appear to dispute. *See* Mot. 10-11 (noting "the difference between the value of the thing sold at the time of delivery and what would have been its value if the representation made by the seller had been true" is a cognizable measure of FBPA damages). At the pleading stage, "plaintiffs need not quantify . . . their injury," a task which must of course be undertaken with the benefit of discovery. *In re Evenflo Company Inc., Marketing,*

*Sales Practices and Products Liability Litig.*, 54 F.4th 28, 35-41 (1st Cir. 2022) (rejecting contention plaintiffs were required to quantify price-premium damages to survive motion to dismiss). As is typical, Plaintiffs' price-premium damages will be calculated through expert econometric analysis. *See, e.g., Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *3-5 (S.D. Fla. 2021) (rejecting challenge to expert price-premium damages analysis and collecting authorities in accord).

In the Eleventh Circuit, "an economic injury qualifies as a concrete injury," and "a person experiences an economic injury when, as a result of a deceptive act or unfair practice, he is deprived of the benefit of his bargain." *Carder v. Graco Children's Prods., Inc.*, 558 F. Supp. 3d 1290, 1306-07 (N.D. Ga. 2021) (quoting *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019)). Courts in this Circuit and across the country routinely find alleged price premium damages are sufficient to plead economic injury under state consumer protection statutes like the FBPA. *See Evenflo*, 54 F.4th 28, at 35-41 (recognizing "overpayment" as a cognizable injury, including "in the form of lost money fairly traceable to an unlawful supra-competitive price," and collecting cases in accord). Plaintiffs have adequately alleged actual injury on a price-premium theory, just like the plaintiffs in the numerous cases collected in *Carder* and *Evenflo*.

HD argues "subjective disappointment about the size of a purportedly promised discount" does not constitute actual injury. Mot. 13. As explained above,

this is irrelevant. Plaintiffs' FBPA injuries are the price premiums attributable to HD's unlawful advertising scheme, not their disappointment. HD's cited cases are easily distinguished because those plaintiffs did not even *attempt* to articulate a price-premium injury in their pleadings.[4] In fact, several of HD's cited cases expressly recognize the plaintiffs could have survived dismissal if they had pled a price premium injuries. *See Belcastro*, 2017 WL 744596, at *5 (suggesting the complaint could have survived if it had alleged "[the retailer] use[d] deceptive reference prices to charge consumers a higher price for the same merchandise"); *Binder v. Premium Brands Opco LLC*, 2024 WL 2978506, at *7 (S.D.N.Y. June 11, 2024) (allegations that "because of a misrepresentation the plaintiff paid an inflated price" by an "objective measure" sufficiently allege price premium injury). Here, in contrast, Plaintiffs plead price premium damages by an objective measure and detailed their injury at length. CCAC ¶¶ 6, 7, 93-96, 135-36. HD's exhortations that Plaintiffs' "disappointed expectations" are not injury is a red herring.

### E.    Plaintiff Condon States Claims Under the UCL, FAL and CLRA.

Nearly all of HD's arguments regarding Ms. Condon overlap with the

---

[4] *E.g., Kim v. Carter's Inc.*, 598 F.3d 362, 365-66 (7th Cir. 2010) (plaintiffs "d[id] not allege" that products they purchased were "worth less than what they actually paid"); *Belcastro v. Burberry Ltd.*, 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017) (same); *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 467-68 (2024) (same); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10-14 (1st Cir. 2017) (same); *Gomez v. Kohl's Corp.*, 2024 WL 3363216, at *2-4 (W.D. Wis. July 9, 2024) (same); *Irvine v. Kate Spade & Co.*, 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) (same); *Johnson v. Jos. A. Bank Clothiers, Inc.*, 2014 WL 4129576, at *5-8 (S.D. Ohio Aug. 19, 2014) (same); *Leigh-Pink v. Rio Props., LLC*, 512 P.3d 322, 328 (Nev. 2022) (same).

remaining Plaintiffs and fail for the same reasons. And HD's additional arguments are meritless. First, Ms. Condon plausibly alleges HD's in-store reference prices are deceptive former price advertisements because they were "regularly discounted from the reference price." CACC ¶ 80. HD's online prices are representative of its in-store prices because, according to HD's website, its online prices only "vary occasionally" from the prices charged at local stores. CACC ¶¶ 28-29. That this pleading is based on "information and belief" is irrelevant because records of HD's in-store prices are "peculiarly within the defendant's knowledge or control." *Conservit, Inc. v. Glob. Mill Supply, Inc.*, 2019 WL 13207586, at *5 (N.D. Ga. Nov. 12, 2019).

Second, for similar reasons, allegations of GE's and Best-Buy's online pricing of the GE Range bought by Ms. Condon supports fictitious market pricing. *Shimono*, 2016 WL 6238483, at *5-*6 (denying a motion to dismiss where the plaintiff pled facts showing that non-party Amazon sold the same product as defendant for far less than the advertised reference price). Neither *Purcelley* nor *Carvalho* support HD's proposition that the geographic location, quantity, or means of sales (i.e., online versus in-store) of comparator third-party retailers are relevant for purposes of Rule 9(b). *See Purcelley*, 2024 WL 2107710 at *5; *Carvalho*, 2022 WL 2290595 at *4. HD's argument for such criteria conflates plausible allegations with proof at trial.

## F.    The Plaintiffs Plead Justifiable Reliance.

The Plaintiffs plead justifiable reliance, alleging in detail the products at issue

were never offered or sold at the "strikethrough" prices or were "on sale" for lengthy periods. *Id*. ¶¶ 21-37. Each Plaintiff alleges he or she would not have purchased the product or would have paid less for it if the true nature of the false "discounts" had been disclosed. *Id*. ¶¶ 40, 46, 54, 61, 71, 79, 135.

For justifiable reliance, plaintiffs need only allege (i) defendant knew about an omitted fact, (ii) defendant failed to disclose this fact, and (iii) plaintiffs would not have purchased the product or paid as much had they known the omitted fact. *See Nalley v. Gen. Motors LLC*, 2022 WL 18459646 (N.D. Ga. Aug. 30, 2022) (collecting cases). Plaintiffs need not affirmatively plead details about any investigation of HD's products or half-truths. *See Hill v. Morehouse Med. Assocs., Inc*., 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (pleading requirements "applied less stringently" when "specific factual information…is peculiarly within the defendant's control" or "the fraud occurred over a period of time"); *Nalley*, 2022 WL 18459646 (justifiable reliance alleged under FBPA); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1291 (N.D. Ga. 2018) (same).

HD's cited cases are not to the contrary. Each decision arose in a context where the pleadings affirmatively showed that plaintiff's and defendant's access to the truth were "equal."[5] It borders on absurdity to suggest that the "opportunity" to

---

[5] *Byung Ho Cheoun v. Infinite Energy*, 2009 WL 10690518 (N.D. Ga. July 1, 2009) ("equal" opportunity to determine "natural gas was running out" where pleadings

painstakingly compile price-history datapoints from third-party archival services put plaintiffs on "equal" footing with HD as it concerns the pricing history of its own products. HD has pointed to no authority—and Plaintiffs have found none—suggesting that the technical expertise required for this exercise has ever been expected of consumers. Nor does HD's suggestion that the plaintiffs should have "shopped around" change that logic. Mot. 16 (suggesting, confusingly, that Plaintiffs should have "examined other retailers' websites before purchasing a product to determine the truth of the reference price and the price offered by other retailers"). As a matter of common sense, Plaintiffs may justifiably rely on pricing information published by HD when purchasing products *from HD*.

### G.    The Plaintiffs Allege False and Misleading Statements.

HD unpersuasively argues that the Plaintiffs have not stated an FBPA claim because they have not shown that the false reference "strikethrough" prices on HD's website were misleading. Plaintiffs' response to this incorrect argument is set out in detail in Sections I.A.1 and I.A.2, above, and applies equally in the FBPA context.

## IV.    CONCLUSION.

For the foregoing reasons, HD's motion should be denied in its entirety.

*[Signature to follow on next page]*

---

stated the contrary was "well known in the industry"); *Zeeman v. Black*, 156 Ga. App. 82, 87 (1980) ("equal" opportunity to determine lot size where plaintiffs had copy of real-estate plat); *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 141 (2006) ("equal" opportunity to learn of building-code provision where provision appeared on face of signed contract and plaintiff admittedly read it).

Dated: May 2, 2025                          Respectfully submitted,

                                            */s/ J. Cameron Tribble*
                                            J. Cameron Tribble
                                            Georgia Bar No. 754759
                                            **THE BARNES LAW GROUP, LLC**
                                            31 Atlanta Street
                                            Marietta, GA 30060
                                            Tel: 770-227-6375
                                            ctribble@barneslawgroup.com

                                            Alexander E. Wolf (*pro hac vice*)
                                            **MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN**
                                            280 South Beverly Drive, Penthouse
                                            Beverly Hills, California 90212
                                            Tel: 872-365-7060
                                            awolf@milberg.com

                                            Jonathan M. Streisfeld (*pro hac vice*)
                                            Kristen Lake Cardoso (*pro hac vice*)
                                            **KOPELOWITZ OSTROW P.A.**
                                            1 W. Las Olas Blvd. Suite 500
                                            Fort Lauderdale, FL 33301
                                            Tel: 954-525-4100
                                            streisfeld@kolawyers.com

                                            Marshal J. Hoda (*pro hac vice*)
                                            **THE HODA LAW FIRM, PLLC**
                                            12333 Sowden Road
                                            Suite B, PMB 51811
                                            Houston, TX 77080
                                            Tel: 832-848-0036
                                            marshal@thehodalawfirm.com

                                            Jonathan Shub (*pro hac vice*)
                                            Samantha E. Holbrook (*pro hac vice*)
                                            **SHUB JOHNS & HOLBROOK
                                            LLP**
                                            Four Tower Bridge

200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: 610-477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

***Counsel for Plaintiffs and the Proposed
Classes***

**CERTIFICATE OF COMPLIANCE**

I hereby certify, in compliance with Local Rule 5.1(C), that the foregoing has been prepared using 14 point Times New Roman font, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

*/s/ J. Cameron Tribble*
J. Cameron Tribble

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

Dated:  May 2, 2025.

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Tel: 770-227-6375
ctribble@barneslawgroup.com