**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ERIC BERGER and JASON LONDRIGAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HOME DEPOT U.S.A., INC., <br><br> Defendant. | Civil Action No. 1:24-cv-01435-VMC |

**ORDER**

This matter is before the Court on Defendant's Motion to Dismiss ("Motion to Dismiss," Doc. 43). For the reasons that follow, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

**I.    Background[1]**

**A.    The Parties**

Plaintiffs Eric Berger, Jason Londrigan, Lacey Timmins, Kevin Culbertson, Maria Gonzalez, and Grace Condon (collectively, "Plaintiffs") filed this case individually and on behalf of others similarly situated against Home Depot U.S.A. Inc. ("Defendant" or "Home Depot"). ("Consol. Class Action Compl.," Doc. 40).

---

[1] Because this case is before the Court on Motion to Dismiss, the following facts are drawn from Plaintiff's Consolidated Class Action Complaint and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964). Quotation marks are omitted from Complaint excerpts to improve readability.

Plaintiffs Berger, Londrigan, Timmins, Culbertson, and Gonzalez ("Online Plaintiffs") purchased products from Home Depot's website. (*Id.* ¶¶ 8–12). Plaintiffs Timmins, Culbertson, and Gonzalez are California residents ("California Online Plaintiffs). (*Id.*). Plaintiff Condon is a California resident and purchased her product in an Oakland, California, Home Depot store. (*Id.* ¶ 13). Home Depot is a Delaware registered corporation that is headquartered in Georgia; it operates online and brick-and-mortar retailer for home and gardening products to consumers in California and nationwide. (*Id.* ¶ 14).

### B.    Procedural History

This case, with only Plaintiffs Berger and Londrigan, was filed on April 4, 2024 (Doc. 1). The Court then consolidated cases filed by Plaintiffs Culbertson, Gonzalez, Condon, and Timmons with this case on December 13, 2024. (Doc. 36). Plaintiffs filed their Consolidated Class Action Complaint on February 21, 2025. (Doc. 40). Generally, Plaintiffs allege that Home Depot advertises false comparison reference prices that deceive customers. (*See id.*). On April 4, 2025, Home Depot filed its Motion to Dismiss arguing that Plaintiffs failed to state a claim upon which relief can be granted. (Doc. 43-1).

### C.    Home Depot's Deceptive Pricing and Consumer Impact

Home Depot describes itself as "the world's largest home improvement retailer." (Doc. 40 ¶ 18). Home Depot was founded in 1978 and today has

approximately 475,000 employees and over 2,300 stores in the United States, Mexico, and Canada. (*Id.* ¶ 19). Home Depot's website operates to sell millions of merchandise units to consumers in Georgia, California, and nationwide. (*Id.* ¶ 20). On the website, many products are individually listed with a markdown to the consumer with prominently displayed "crossed-out" reference price next to the sale price and "Save $__" or "Save __%" representing a discount from the substantially higher reference price. (*Id.* ¶ 22). Reasonable consumers understand the strikethrough reference price, or the adjacent "Save $__" or "Save __%", independently and/or collectively to convey the product was listed or sold on the website at the reference price in the recent past and for a substantial time period but is now being listed and sold to the customer at a substantial discount. (*Id.* ¶ 23). However, the reference price is falsely inflated because Home Depot rarely listed or sold the item at the reference price. (*Id.* ¶ 24). The reference price misled customers into believing the displayed reference price was a former or regular price that Home Depot usually listed or sold the item at in the recent past and falsely conveyed to customers they were receiving a substantial markdown or discount. (*Id.*). Home Depot had used deceptive pricing and advertising practices to pressure consumers into purchasing products at inflated prices from 2023, 2024, and years earlier. (*Id.* ¶¶ 26–27). Home Depot consistently adopted this practice in its California stores as the FAQ page titled, "About Shopping Online at The Home

3

Depot" stated online prices only "vary occasionally" from prices charged at local stores. (*Id.* ¶¶ 28–29).

Home Depot's reference prices were unsubstantiated, based on an undisclosed formula that is outdated or cherrypicked and not representative of prevailing market prices. (*Id.* ¶ 32). As other competing retailers concurrently sell identical products Home Depot offers, Home Depot does not independently verify reference prices at prevailing market prices listed by other retailers for a substantial time period and in substantial quantities. (*Id.* ¶ 33). Home Depot does not update the reference prices daily leading to the belief that Home Depot's advertised reference prices are higher than prevailing market prices for identical products, and eliminating any reasonable basis to believe that Home Depot consistently sells its products below the prevailing market prices.[2] (*Id.* ¶¶ 33–34). Home Depot offers exclusive products for sale to include, but not limited to, brand names such as Glacier Bay, Ryobi, Husky, Hampton Bay, Everbilt, Defiant, LifeProof, and HDX. (*Id.* ¶ 36). Home Depot applied the same price scheme to the

---

[2] Plaintiffs cited two examples: a GE Electric Dryer in White with Wrinkle Care sold for $779 at Home Depot during September 2023 to January 2024; yet Best Buy sold the same dryer during August 2023 to December 2023 for $549, and in some cases, $499. (Doc. 40 ¶ 35). Another example was that Orville's sold the dryer during November 2023 to December 2023 for $497. (*Id.*). Home Depot was not following the economic principle that, in competitive markets, actual prices for products offered by various vendors tend to converge on the market price. (*Id.* ¶ 34).

exclusive products.[3] (*Id.*). The website also contained publicly available product reviews with several customers purchasing at the purported "savings" price and showed sold numerous exclusive products sold on the basis of deceptive strikethrough prices. (*Id.* ¶ 37). Home Depot's actions have also violated the Federal Trade Commission Act ("FTCA"). (*Id.* ¶ 97). Under the FTC regulations, Home Depot's former price comparisons, price scheming, and fake limited duration are prohibited practices. (*Id.* ¶¶ 97–100).

Academic studies have shown the effectiveness of deceptive pricing schemes similar to Home Depot's. (*Id.* ¶ 85). When an impression of savings is created, the presence of a higher reference price enhances consumers' perceived value and willingness to pay for the product while the intention to search for lower prices decreases. (*Id.* ¶ 86). Decades of research support the conclusion that advertised references prices enhance perceptions of the deal's value even if reference prices are implausibly high. (*Id.* ¶ 87). Historic research studies have also confirmed deceptive advertising through false reference pricing is intended to and does influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would

---

[3] Plaintiffs cited the example of Home Depot's website showing an American Standard toilet, listed as "Exclusive" to Home Depot; the product was listed at a discount price of $287.00 with a strikethrough price of $338.10 on July 8, 2024. (Doc 40. ¶ 37). Six months ago, the same product had a discount price of $289.00 with a strikethrough price of $338.10 on January 18, 2024. (*Id.*).

not have, to purchase items they otherwise would not have and to purchase products from a specific retailer. (*Id.* ¶¶ 89–92).

The falsely discounted products have a lower market value than the promised "regular" price and this potentially harms consumers as the reference prices are false and the products are rarely, if ever, offered or sold at the reference price. (*Id.* ¶ 93). Home Depot's products had a lower value than even the "sale" price, not only lower than the promised regular price. (*Id.* ¶ 94). By using deceptive reference pricing and discounts, Home Depot artificially drove up the product demand and by extension drove up the products' price, which reasonable consumers would not have paid had they known the products were rarely, if ever, offered on the website at reference prices. (*Id.*). Consumers would not have paid the prices charged if they had known the reference prices were not prevailing market prices, but instead subjecting consumers to pay a "price premium" (*Id.* ¶¶ 94–95).

### D.    Plaintiffs' Purchases

Plaintiff Berger is a Texas resident and purchased a Samsung Front Gas Dryer for $798.00 from the Home Depot website in November 2023. (*Id.* ¶ 38). The unit was advertised at a purported 33% discount from a strikethrough price of $1,199.00, but the dryer purchased by Berger had been listed at various "sale" prices below $1,199.00 since at least September 2023. (*Id.*). Berger was motivated

to purchase the product right away in order to take advantage of a temporary deal. (*Id.* ¶ 39). As of July 8, 2024, Home Depot listed the product with a $1,399.00 strikethrough reference price while on the same day Samsung's website listed the dryer for sale at $1,259.00, which Berger believes was a similar disparity that existed when he purchased the dryer from Home Depot. (*Id.* ¶ 42).

Plaintiff Londrigan is a Texas resident and purchased a Samsung Top-Load Washer for $578.00 from the Home Depot website in September 2023. (*Id.* ¶ 44). The unit was advertised as a purported 35% discount from the strikethrough price of $899.00. (*Id.*). Londrigan believes the washer purchased had been listed at various "sale" prices below $899.00 strikethrough for many months prior and as of July 2024, the washer has never been offered or sold at its "original" price. (*Id.*). Home Depot advertised the product at a reference price higher than prevailing market price. (*Id.* ¶ 48). For example, on July 8, 2024, Home Depot listed the product with an $899.00 strikethrough reference price when Samsung's website had the dryer listed on sale for $809.00 and Londrigan believes a similar disparity existed when he purchased his washer from Home Depot. (*Id.*).

Plaintiff Timmins is a California resident and purchased a GE 24-inch Top Control Portable Black Dishwasher with Stainless Steel Interior from Home Depot's website on February 17, 2024. (*Id.* ¶ 50). Timmins saw the listing page with a strikethrough regular price of $949.00, and adjacent "Save 36%", and a sale price

of $598.00. (*Id.*). She was motivated to purchase the product quickly, as to benefit from a temporary deal, and purchased the product for $598.00. (*Id.*). Timmins believed she received all advertised discounts off the former and regular price charged by Home Depot when the product was shipped to her address in Stanislaus County, California. (*Id.*). Timmins provided a screenshot listing from April 17, 2024, that showed the product on sale for $628.00 with a strikethrough reference price of $949.00. (*Id.* ¶ 51). Timmins alleged the sale was false and misleading as archived website entries showed the product was regularly offered on the website at a discounted price. (*Id.* ¶ 52). For example, on July 3, 2024, the product was still on sale at $598.00 with a strikethrough reference price of $949.00 and "Save $351.00 (37%)." (*Id.* ¶ 53). Timmins viewed and relied upon the website's purported current and limited time sale promotion. (*Id.* ¶ 54). The dishwasher Timmins purchased was not substantially marked down or discounted and any discount received was grossly exaggerated. (*Id.* ¶ 55).

Plaintiff Culbertson is a California resident and purchased a GE Electric Dryer from Home Depot's website on January 2, 2024, for $528.00. (*Id.* ¶ 59). Culbertson saw the listing page with a former price of $779.00 that was stricken through and an adjacent message read "See Lower Price in Cart." (*Id.*). He was motivated to purchase the product quickly, to benefit from a perceived temporary deal. (*Id.*). Culbertson added the dryer to his cart and purchased the product,

8

believing to have received all advertised discounts from the former and regular price Home Depot charged. (*Id*.). The dryer was shipped to his address in San Mateo County, California. (*Id*.). Culbertson believes the sale was false and misleading as the product was regularly offered on the website at a "discounted" prices.[4] (*Id*. ¶ 60). Culbertson alleges the sale was false and misleading based upon archived copies of Orville's and Best Buy's website showing the prevailing market price for the same dryer was never $779.00. (*Id*. ¶ 62). Orville's website offered the dryer on its website at $497.00 during November 2023 and December 2023. (*Id*. ¶ 63). Best Buy offered the dryer on its website at $579.00, $549.00, $499.00, and $529.00 during August 2022 to December 2023. (*Id*. ¶ 64). Culbertson's dryer from Home Depot was not substantially marked down or discounted with any discounted received grossly exaggerated. (*Id*. ¶ 65).

Plaintiff Gonzalez is a California resident and purchased a GE 24 in. Built-In Tall Tub Top Control Fingerprint Resistant Stainless-Steel Dishwasher for $478.00 from Home Depot's website on January 2, 2024. (*Id*. ¶ 69). Gonzalez saw the listing page with a former or regular price of $829.00 was stricken through and an adjacent sale price of $478.00. (*Id*.). Gonzalez was allegedly motivated to purchase the product quickly, to take advantage of the fleeting deal; she purchased

---

[4] In September 2023 and October 2023, the dryer's sale price was $548.00. In November 2023, the dryer's sale price was $498.00 and in January 2024, the dryer's sale price was $528.00. (Doc. 40 ¶ 60).

the product with the belief she received all advertised discounts from the former and regular price charged by Home Depot. (*Id*.). The product was shipped to Gonzalez's address in Merced County, California. (*Id*.). Gonzalez alleges the sale was false and misleading as the product was regularly offered at the "discounted" price of $478 during June 2023 to January 2024. (*Id*. ¶ 70). Gonzalez cited an example of a screenshot product listing from April 30, 2024, with the sale price showing $478.00 and a strikethrough price of $829.00. (*Id*. ¶ 72). Gonzalez also cited the sale as misleading and false as other various retailers' websites showed the same dishwasher was never at $829.00[5] during June 2023 to December 2023. (*Id*. ¶ 73). Gonzalez's purchase from Home Depot at $478.00 was not substantially marked down or discounted. (*Id*. ¶ 74).

Plaintiff Condon visited an Oakland, California Home Depot store and purchased a GE 30-inch Electric Range for $528.00. (*Id*. ¶ 78). The range was on sale as Condon saw a sign with a former or regular price of $649.00 and an adjacent "sale" price of $528.00. (*Id*.). She purchased the range believing she received all advertised discounts off the former and regular price charged by Home Depot. (*Id*.). The product was delivered to Condon's Alameda County, California address.

---

[5] At ABW Appliance in June 2023 the dishwasher was on sale for $478.00. (Doc. 40 ¶ 73). At Best Buy in June 2023, the dishwasher was $479.00 and remained so in August and December 2023. (*Id*.). GE Appliances sold the dishwasher for $532.00 in August and September 2023. (*Id*.). Lastly, US Appliance sold the dishwasher for $531.00 in October 2023. (*Id*.).

(*Id.*). Condon viewed and relied on Home Depot's purported current and limited time sale promotion. (*Id.* ¶ 79). Condon alleges the sale was false and misleading as it was regularly discounted from the reference price and archived copies of other various retailers' websites sold the same range at a different prevailing market price from $649.00.[6] (*Id.* ¶ 80). Condon's purchase was not substantially marked down or discounted, with any discount received grossly exaggerated. (*Id.* ¶ 81).

Each Plaintiff interpreted the strikethrough price advertised on Home Depot's website as indicating the product was being sold at a limited-time discount from a price regularly charged in the recent past and for a substantial time. (*Id.* ¶¶ 39, 45–46, 61, 69, 78). Each Plaintiff reasonably relied upon the representations that the product 1) had a former and regular price of the stated reference price, 2) been offered for sale on the website at the stated reference price, on a regular basis in the recent past and for a substantial time period, and 3) was truly on sold and sold at a substantial discount. (*Id.* ¶¶ 40, 46, 54, 61, 71, 79). However, the long-advertised "discount" on the product motivated each Plaintiff to purchase the product and created artificial demand by Home Depot's allegedly false-reference pricing caused them to pay more than they would have otherwise

---

[6] GE Appliances sold the range during July to September 2022 at $529.00 while Best Buy sold the range during April to October 2022 at $479.00 and $499.00. (Doc. 40 ¶ 80).

as they would not have purchased the product from Home Depot or would have paid less for it. (*Id.* ¶¶ 41, 47, 57, 67, 76, 83). Each Plaintiff read Home Depot's strikethrough not with the intention to serve as a comparison price to the other retailers' prices offered for the same product but instead as Home Depot showing listed the product at a reference price higher than the prevailing market price. (*Id.* ¶¶ 42, 48, 67, 76, 83). Plaintiffs Timmins, Culbertson, Gonzalez and Condon allege in at least three months prior to her purchase, Home Depot rarely, if ever, offered any discounted items sold on its website at reference prices. (*Id.* ¶¶ 56, 66, 75, 82). All Plaintiffs continue to be interested in purchasing goods and products at Home Depot and being offered discounted prices but are unable to trust and rely upon Home Depot's advertising. (*Id.* ¶¶ 43, 49, 58, 68, 77, 84).

Plaintiffs bring a total of seven claims. All Plaintiffs assert a violation of Georgia Fair Business Practices Act ("FBPA") (Count One). (*Id.* ¶¶ 125–137). On behalf of themselves and the California Online Plaintiffs, Timmins, Culbertson, Gonzalez, and Condon assert violations of California Unfair Competition Law ("UCL") (Count Two), California False Advertising Law ("FAL") (Count Four), and California Consumer Legal Remedies Act ("CLRA") (Count Six). (*Id.* ¶¶ 138–160, 184–197, 212–223). On behalf of herself and the California In-Store Purchasers, Plaintiff Condon asserts a violation of the UCL (Count Three), FAL (Count Five), and CLRA (Count Seven). (*Id.* ¶¶ 161–183, 198–211, 224–235).

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555.

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff making a fraud claim must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained

as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

## III.   Discussion

Home Depot seeks to dismiss all of Plaintiffs' claims for failure to state a claim. The Court will begin with Plaintiffs' Georgia Fair Business Practice Act claim and then address the California state law claims.

### A.   Plaintiffs failed to allege an injury under the Georgia Fair Business Practice Act.

A violation of the FBPA is a fraud-based offense, requiring it to comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See Nalley v. Gen. Motors LLC*, 1:21-cv-04174-WMR, 2022 WL18459646 at *7 (N.D. Ga. Aug. 30, 2022); *see also* Fed. R. Civ. P. 9(b). "A private FBPA claim has three elements: a violation of the Act, causation, and injury." *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006). The private right of action hinges on the plaintiff being able to show an injury; the injury of actual damages means relief beyond the refund of purchase price and restitution. *See Small v. Savannah Int'l Motors, Inc.*, 619 S.E.2d 738, 743 (Ga. Ct. App. 2005). Actual damages are calculated by "the difference between the value of the thing sold at the time of delivery and what its value would have been if the representations made had been true." *Goody Prods., Inc. v. Dev. Auth. of City of Manchester*, 740 S.E.2d 261, 271 (Ga. Ct. App. 2013).

14

Home Depot argues that the Online Plaintiffs failed to allege the causation and injury elements and that Plaintiffs Berger, Londrigan, and Timmins also failed to allege the violation element. (Doc. 43-1 at 15–26).[7] As to the injury element, Plaintiffs argue that they have adequately alleged an injury on a price premium theory; they allege that Home Depot's "deceptive pricing scheme led to higher consumer demand for the products purchased, resulting in artificially inflated prices."[8] (Doc. 46 at 27). And at the pleading stage, Plaintiffs argue that they do not need to quantify their injury at this point. (*Id.* at 27–28).

Georgia courts have not explicitly recognized the price premium theory Plaintiffs rely on. Under the FPBA, "although purchase price is relevant to value, it is not alone sufficient to show value." *Campbell v. Beak*, 568 S.E.2d 801, 806 (Ga. Ct. App. 2002). Nonetheless, the Court assumes that a price premium injury theory exists for the purpose of the Motion to Dismiss. "To properly allege a price premium injury, plaintiff must show 'either that because of a misrepresentation the plaintiff received a good worth less than what he paid for, i.e., a good of inferior quality, or that because of a misrepresentation, the plaintiff paid an inflated price.'" *Binder v. Premium Brands Opco LLC*, No. 23-cv-3939, 2024 WL

---

[7] Citations to page numbers refer to the pages in the relevant document as numbered by the CM/ECF system.

[8] Since the Plaintiffs are only proceeding on a price premium theory, the Court will not address the deception as inducement to buy theory.

15

2978506 at *7 (S.D.N.Y. June 11, 2024) (quoting *Belcastro v. Burberry Ltd.*, No. 16-CV-1080, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017)). Plaintiffs rely on the latter theory: that they paid an inflated price or "overpayment." (Doc. 46 at 27). "To establish an overpayment price premium theory, 'a plaintiff must allege that he overpaid by some *objective measure*, and not just that he felt, subjectively, that he overpaid.'" *Id.* (quoting *Belcastro*, 2017 WL 5991782, at *4). Plaintiffs cannot establish such an objective measure because they have failed to establish the "base market price of the products against which to measure the alleged overpayment," *id.* at *8, or failed to allege that Home Depot used "deceptive reference prices to charge consumers a higher price for the same merchandise." *Irvine v. Kate Spade & Co.*, No. 16-CV-7300, 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (quoting *Belcastro*, 2017 WL 5991782, at *5).

Plaintiffs argue that they have "adequately plead price premium damages by an objective measure," but the paragraphs they point to are conclusory. (Doc. 46 at 29) (citing Doc. 40 ¶¶ 6, 7, 93–96, 135–36). Moreover, the allegations related to the Plaintiffs' actual purchases generally do not permit the plausible inference of an overpayment. For example, Plaintiff Londrigan purchased a washer for $578.00 because Home Depot's strikethrough price was $899.00 while Samsung listed the dryer for sale at $809.00. (Doc. 40 ¶¶ 44, 48). Plaintiff Culbertson purchased a dryer for $528.00 from Home Depot because it was listed as being

discounted from $779.00. (*Id.* ¶ 59). However, Orville's and Best Buy were selling the same dryer for between $497.00 and $549.99, a range that encompasses Plaintiff Culbertson's purchase price. (*Id.* ¶¶ 63–64). Where Georgia courts are clear that purchase price alone is not sufficient to show value, *Campbell*, 568 S.E.2d at 806, these allegations alone do not rise to the level of an inference of overpayment. In sum, the specific allegations related to the Plaintiffs' purchases do not indicate that they overpaid by some objective measure. Nor do these allegations show that Home Depot sells the same products without the sale prices for lower prices.

The cases that Plaintiffs rely on are generally inapposite because the products lacked an objective characteristic that the plaintiffs did not receive. In *Johnson v. GAPVT, Inc.*, the buyer alleged that he "paid a premium price for a Mustang Saleen and got a much less valuable car instead." 663 S.E.2d 779, 784 (Ga. Ct. App. 2008). In *Carder v. Graco Children's Products, Inc.*, the plaintiff alleged an economic injury where a booster seat was not safe for children and lacked the characteristic for safety in side-impact collisions, as advertised. 558 F. Supp. 3d 1290, 1306–07 (N.D. Ga. 2021); *see also In re Evenflo Co. Inc. Mktgs. Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 35–41 (1st Cir. 2022) (holding that the plaintiffs had standing to seek damages where they relied on representations that a booster seat was impact tested and safe for children).

Here, because the Online Plaintiffs failed to specifically allege that they objectively paid more for the products they purchased, they have not stated an injury under the FPBA and this claim is dismissed. The Court need not reach Home Depot's arguments on the violation and causation elements.

## B.    Timmins and Condon have adequately alleged California state law claims.

Home Depot argues that Timmins's and Condon's claims for violation of California's FAL, UCL, and CLRA fail to comply with Rule 9(b)'s heightened pleading standards.

California's FAL prohibits "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500. Further, "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . defined within three months next immediately preceding the publication of the advertisement . . ." *Id.* § 17501. The statute has been interpreted broadly to "not only advertising which is false, but also advertising which, *although true,* is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Moore v. Mars Petcare US*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citation omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The UCL provides a separate theory of liability under

'unlawful', 'unfair', or 'fraudulent' prongs." *Sperling v. DSW Inc.,* EDCV 15-1366, 2015 WL 13309476 at *8 (C.D. Cal. Nov. 19, 2015). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." *Id.* (quoting *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1103 (9th Cir. 2013)); *see also* Cal. Bus. Prof. Code § 17200. Additionally, "a violation of the [FTCA] may constitute conduct prohibited by the UCL." *See Inga v. Bellacor.com, Inc.,* 2:19-cv-10406-MWF-MRW, 2020 WL 5769080 at *3 (C.D. Cal. July 17, 2020).

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, the CLRA prohibits practices various practices such as:

- "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have." *Id.* § 1770(a)(5).

- "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." *Id.* § 1770(a)(7).

- "Advertising goods or services with intent not to sell them as advertised." *Id.* § 1770(a)(9).

- "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." *Id.* § 1770(a)(13).

To state a claim under the FAL, UCL, and CLRA, plaintiffs must allege facts showing the advertisement or practice is misleading to a reasonable consumer. *See Mitchell v. NY & Co Ecomm LLC*, CV 23-10117, 2024 WL 1328333 at *5 (C.D. Cal. Mar. 26, 2024). Each of these claims is governed by the reasonable consumer test, where a plaintiff must show that members of the public are likely to be deceived. *See Real v. Y.M.I. Jeanswear, Inc.*, EDCV 17-0870, 2017 WL 11675686 at *3 (C.D. Cal. Sept. 1, 2017). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting in the circumstances, could be misled." *Id.* (internal quotations omitted). "A reasonable consumer is the 'the ordinary consumer acting reasonably under the circumstances.'" *Sperling*, 2015 WL 13309476 at *8 (quoting *Davis v. HSBC Bank Dev., N.A.*, 691 F.3d 1152, 1161–62 (9th Cir. 2012)). The reasonable consumer test generally involves questions of facts that may not be resolved on a motion to dismiss, but dismissal is appropriate when the court determines the plaintiff's claims are not plausible. *See Carvalho v. HP, Inc.*, 21-cv-08015, 2022 WL 2290595 at *4 (N.D. Cal. June 24, 2022).

When a complaint is based on a deceptive pricing scheme, the allegations are rooted in fraud and Rule 9(b)'s standards apply. *See Kearns v. Ford Motor Co.*,

20

567 F.3d 1120, 1125 (9th Cir. 2009). Pleadings based on information and belief do not meet Rule 9(b) standards. *See Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). However, the standard "may be applied less stringently" when specific factual information is peculiarly within the defendant's knowledge or control. *Hill v. Morehouse Med. Assoc., Inc.*, No. 02-14429, 2003 WL22019936 at *3 (11th Cir. Aug. 15, 2003).

### 1.  Timmins's allegations are sufficient.

Home Depot argues that Timmins's California law claims fail to comply with Rule 9(b) heightened pleading standards because Timmons failed to allege the price that other retailers charged for the non-exclusive product she purchased. (Doc. 43-1 at 27). Plaintiffs argue that Home Depot overlooks their theory that Home Depot's "regular" or "former" prices were misleading because the item listed for sale had not been sold at the former price in the recent past and for a substantial time. (Doc. 46 at 12–13).

Timmons alleged that on February 17, 2024, she visited Home Depot's website and saw a dishwasher with a strikethrough regular price of $949.00, an adjacent save 36%, and a sale price of $598.00. (Doc. 40 ¶ 50). Two months later, the product was still on sale, then for $628.00 with a strikethrough reference price of $949.00. (*Id.* ¶ 51). On July 3, 2024, the product was still on sale for $598 with a strikethrough reference price of $949.00. (*Id.* ¶ 53). Based on archived copies of

Home Depot's website, the dishwasher was regularly offered at discounted prices of either $598.00 or $628.00 with a regular price of $949.00 in March 2023, October 2023, and December 2023. (*Id.* ¶ 52). Timmons alleges that the dishwasher she bought was not substantially marked down or discounted and that she was persuaded to make her purchase because of the misleading sale based on false reference prices. (*Id.* ¶ 57). Reasonable customers would not have paid the prices charged had they known that the products were rarely, if ever, offered on the website at the reference prices. (*Id.* ¶ 94).

"Courts have construed strikethrough prices as representing former prices despite 'the lack of specific words indicating the regular price.'" *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 725 (N.D. Cal. 2024). Under the FAL, an advertised discount from the regular price can be deceptive when "1) the alleged sale price does not in fact differ from the regular price at which the product is ordinarily sold; or 2) the alleged original price constituted a false valuation of the product." *Knapp v. Art.com, Inc.*, 16-cv-00768, 2016 WL 3268995 at *3 (N.D. Cal. June 15, 2016) (internal quotations and citation omitted). When a plaintiff has plausibly alleged that defendant sold products at prices significantly lower than advertised former prices, there is no need to identify other prices established by other retailers in saying the former prices are higher than prevailing market prices. *Id*. The alternative inference would mean a company consistently sells its products by the

same percentage well below market price and a reasonable basis for that inference would need to be given. *See id.*; *see also Vizcarra*, 710 F. Supp. 3d at 726. Therefore, contrary to Home Depot's argument, Timmons did not need to include allegations about the prices other retailers charged.

Timmons has sufficiently alleged violations of California's UCL, FAL, and CLRA. Timmons's allegation that Home Depot's sale price was not really a sale price and therefore misleading, deceptive, or confusing to a reasonable consumer is sufficient to state a claim under the FAL. The FAL violation is also a sufficient predicate for the unlawful and/or fraudulent prongs of the UCL. Finally, the allegations fit within the CLRA's prohibition on practices such as "making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." For these reasons, Home Depot's motion to dismiss Timmons's California law claims are denied.

### 2. Condon's allegations are sufficient.

Home Depot moves to dismiss Condon's claims for violation of California's UCL, FAL, and CLRA on the grounds that they fail to comply with Rule 9(b) heightened pleading standards by making allegations on information and belief. (Doc. 43-1 at 29–30). Home Depot also argues that Condon only provides prices from other retailers' websites, rather than competing stores in the same location,

which cannot establish the prevailing market price or that Home Depot's reference price was false. (*Id.* at 30).

Here, Condon has plausibly alleged that the GE Range's reference price of $649.00 was regularly discounted to the sale price of $528.00. (Doc. 40 ¶ 78). She also alleged the sale price was false by pointing to other retailers, namely GE Appliances and Best Buy, who sold the range for $479.00, $499.00 or $529.00, not $649.00. (*Id.* ¶ 80). Condon further alleged that in the three-month period prior to her purchase, Home Depot rarely, if ever offered the items at the advertised reference price. (*Id.* ¶ 82). Condon made her purchase because of Home Depot's representations that the range had been offered for sale at the reference price in the recent past and was truly on sale and being sold at a substantial discount. (*Id.* ¶ 83). And Plaintiffs allege that reasonable consumers would not have paid the prices charged had they known that the products were rarely, if ever, offered on the website at the reference prices. (*Id.* ¶ 94).

Condon's allegations satisfy Rule 9(b)'s standards. Condon alleged Home Depot's sales practices, including discounts and reference prices found online and in stores. (Doc. 40 ¶¶ 26, 30, 32–34, 80, 82, 206). She explained that online prices "vary occasionally from the prices charged at local stores," (*id.* ¶ 29), which explains why she is relying on online prices for an in-store purchase. And she provided historical pricing at other retailers. (*Id.* ¶ 80). Although some of Condon's

allegations were made on information and belief, most of her allegations are supported by actual facts. *See Shimono v. Harbor Freight Tools USA, Inc.*, EDCV16-1052, 2016 WL 6238483 at *6 (C.D. Cal. Oct. 24, 2016) (finding that plaintiff satisfied Rule 9(b) by making allegations based on reasonable investigation and solid facts). And as Condon notes, the information about what prices Home Depot historically charged in its stores is within Home Depot's knowledge and control, so the Court will be more lenient.

Considering the allegations in the light most favorable to Plaintiffs, Condon's allegations are sufficient to state claims under the FAL, UCL, and CLRA. Condon's allegation that Home Depot's sale price was not really a sale price and therefore misleading, deceptive, or confusing to a reasonable consumer is sufficient to state a claim under the FAL. The FAL violation is also a sufficient predicate for the unlawful and/or fraudulent prongs of the UCL. Finally, the allegations fit within the CLRA's prohibition on practices such as "making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." For these reasons, Home Depot's motion to dismiss Condon's California state law claims are denied.

### C.    The Court does not have sufficient information to dismiss Culbertson and Gonzalez's California claims.

Home Depot argues Culbertson and Gonzalez's California claims should not proceed, as a Georgia choice-of-law provision governs.[9] (Doc. 43-1 at 28–29). Plaintiffs counter that Culbertson and Gonzalez may pursue California claims, as the Georgia choice of law provision was not validly assented to under California law. (Doc. 46 at 18–20).

To determine whether the parties validly formed a contract to apply Georgia law, the Court looks to the choice of law provisions of the forum state for cases originally filed here. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under the *lex loci contractus* rule, when a contract is made in one state and performed in another state, the substantive law of the state where the contract is performed applies *See Ramirez v. SnapMedTech, Inc.*,1:21-cv-007625-VMC, 2023 WL 3641836 at *6 (N.D. Ga. Mar. 28, 2023). "While Georgia courts generally only adhere to *lex loci contractus* in the absence of a choice-of-law provision," another judge in this district has noted that "it would be illogical for a court to use provisions within a contested contract to govern consideration of the contract's validity. The contract formation issue is a separate question that the Court must analyze before deciding whether to enforce the [choice of law provision]." *U.S. Sec.*

---

[9] Home Depot did not argue that the choice of law provision bars Timmons's claims; therefore, the Court need not address Plaintiffs' arguments on that issue.

26

*Assocs., Inc. v. Lumby*, No. 1:18-CV-5331-TWT, 2019 WL 8277263, at *7 (N.D. Ga. Sept. 25, 2019).

The Court cannot determine whether the choice of law was assented to, whether Georgia courts or California courts would enforce the choice of law provision, and whether the provision as drafted would preclude application of another state's statutory law, because the Court has not been supplied with the contract. The screenshot in the Complaint (Doc. 40 at 50) is blurry and hard to read and the choice of law provision was not provided to the Court. While the doctrine of incorporation by reference allows courts to "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity," the Court cannot conduct an incorporation by reference analysis without the terms of service and evidence that the supplied terms are undisputed as to authenticity and were in effect on the relevant purchase date. *Luke v. Galley*, 975 F.3d 1140, 1144 (11th Cir. 2020). Because the Court does not have the information it needs, Culbertson and Gonzalez's California claims can proceed.

27

## IV.    Conclusion

For the above reasons, the Court **GRANTS in part** Defendant's Motion to Dismiss (Doc. 43) as to Count 1 and **DENIES in part** the Motion as to Counts 2, 3, 4, 5, 6, and 7.

**SO ORDERED**, this 31st day of March, 2026.

_____
Victoria Marie Calvert
United States District Judge