**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LACEY TIMMINS, KEVIN CULBERTSON, MARIA GONZALEZ, and GRACE CONDON, *individually and on behalf of all others similarly situated*,<br>Plaintiffs,<br>v.<br><br>HOME DEPOT U.S.A., INC.,<br>Defendant. | Civil Action<br>No. 1:24-CV-01435-VMC |

**[PROPOSED] AGREEMENT REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

## I. PURPOSE

This Agreement will govern discovery of discoverable Documents originating from Hard Copy sources and as Electronically Stored Information in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of this Court, this Court's Standing Order (Dkt. 19), the Parties' Stipulated Protective Order entered in this Lawsuit, and any other applicable orders and rules.

This Agreement is not intended to expand any Document preservation or production requirements under the Federal Rules of Civil Procedure or limit any protection available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of Evidence. The Parties will endeavor to comply with this

Agreement, but if compliance with this Agreement creates an undue burden or expense, the Parties shall attempt to resolve such issues in good faith.

By agreeing to this Agreement, no Party waives any rights under Federal Rule of Civil Procedure 26. Further, the Parties agree that the standard enumerated in Federal Rule of Civil Procedure 37(e) will govern any issue regarding spoliation measures or sanctions in this case. The Parties also acknowledge that nothing in this Agreement waives, restricts, or eliminates the Parties' "claw-back" rights and obligations pursuant to the Protective Order entered in this case.

## II. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter regarding the discovery of ESI.

## III. DEFINITIONS

(a) "Lawsuit" or "Litigation" means the lawsuit filed by Plaintiffs against Defendant in the United States District Court for the Northern District of Georgia on April 4, 2024, and assigned the Case Number No. 1:24-CV-01435-VMC, as modified by the Court's Order entered on March 31, 2026 (Dkt. 50), and as may be modified by further filings and/or Court orders.

(b) "Custodian" means the Parties to the Litigation and any employees reasonably likely to have information relevant to the claims and defenses in the case

or to the particular request(s) at issue. A Custodian shall also include former employees of the Parties, to the extent the Parties exercise possession, custody, and control over the information and/or Documents in the possession of such employees.

(c) "Document" carries the meaning consistent with Federal Rules of Civil Procedure 26 and 34(a) and Federal Rule of Evidence 1001.

(d) "Electronically Stored Information" or "ESI" carries the meaning consistent with Federal Rules of Civil Procedure 26 and 34(a) and Federal Rule of Evidence 1001.

(e) "Email" means an electronic means for communicating written information through non-telephone systems that will send, store, process, and receive information.

(f) "Format" means the internal structure of a file, which defines the way it is stored and its intended use.

(g) "Hard Copy" Document means any Document or thing discoverable under Federal Rules of Civil Procedure 26(b)(l) and 34 that cannot be characterized as ESI.

(h) "Native Format" or "Native File" mean the underlying file(s) containing the ESI at issue in the file system in which such ESI was originally created.

(i) "Party" or "Parties" means the Plaintiffs and Defendant in this Litigation.

(j) "Producing Party" means a Party that produces Documents.

(k) "Receiving Party" means a Party to whom Documents are produced.

(l) "Responsive Document" means any Document, excluding source code, that is responsive to any Document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

(m) "Tagged Image File Format" or ".TIFF" refers to the CCITT Group IV graphic file Format for storing bit-mapped images, with multiple compression Formats and resolutions.

## IV. PRESERVATION

The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

(a) The Parties are expected to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying appropriate limits to discovery, including limits on Custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery

issues. A Party's meaningful compliance with this Agreement and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

(b) The Parties agree that the following data sources are not reasonably accessible or proportional to the needs of discovery because of undue burden or cost pursuant to Rule 26(b)(2)(B), and ESI from these sources will be preserved only to the extent they would otherwise be preserved in the usual course of business, but not searched, reviewed, or produced:

1. Backup data that is substantially duplicative of data that is more accessible elsewhere;
2. Systems no longer in use when the Litigation began and cannot be accessed;
3. Digital voicemail and text messages;
4. Messaging applications including Zoom or Google Chat/Workspace;
5. Information from handsets, mobile devices, personal digital assistants, and tablets;
6. Automatically saved versions of Documents and Emails that are duplicative of other versions of the same Documents and Emails;
7. Video and audio recordings;

8. On-line access data such as temporary internet files, history, cache, cookies, and the like;

9. Artificial Intelligence ("AI") chat threads and conversation histories, including prompts/inputs, uploads, system messages, outputs, logs, shared/exported conversations, and AI-enabled call or meeting transcripts and any associated AI-generated outputs (e.g., Microsoft Copilot, ChatGPT, Claude, Claude Code, Gemini, Perplexity, and similar tools);

10. Deleted, slack, fragmented, or unallocated data only accessible by forensics;

11. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

12. Server, system and network logs;

13. Data in metadata fields that are frequently updated automatically, such as last-opened dates;

14. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment that was not used by identified Custodians.

(c) Nothing in this Agreement prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible.

(d) The Parties need not preserve, for this Litigation, the categories of ESI listed in Section IV(b) unless, on the date that this Agreement is entered by the Court, either Party has a policy that results in the routine preservation of such ESI, in which case such Party shall continue to preserve such ESI in accordance with its policy.

(e) The Parties shall not seek discovery of items that need not be preserved pursuant to Section IV(b) above. If any general discovery request is susceptible of a construction that calls to produce items that need not be preserved pursuant to Section IV(b), such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

## V. SEARCH

Each Producing Party shall design and implement the methods it uses to identify, cull, and review its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in the Lawsuit, and the Receiving Party's discovery requests. A Producing Party may apply search terms to appropriate sources and may also conduct a targeted collection of sources likely to contain responsive materials. The Parties agree to disclose their search and production methodology, including but not limited to custodians, non-custodial data

sources, and search terms used to cull potentially responsive ESI.

The Parties shall meet and confer in good faith regarding (1) proposed search terms following discussion with custodians of the search terms most likely to capture responsive documents, (2) custodian selection, and (3) custodial and non-custodial data sources. Any potential agreement that the Parties may reach on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all responsive documents of which a party is aware.

## VI. COLLECTION

(a) Hyperlinks are not conventional attachments. Therefore, documents that are hyperlinked inside a responsive email do not need to be produced in the first instance as part of the same family group. After reviewing Documents or ESI produced in response to a discovery request, a Receiving Party may make reasonable and proportionate requests for specific hyperlinked documents, with the Producing Party reserving all objections. However, this does not relieve the Parties of their obligation to conduct a reasonable and proportionate search of non-custodial sources and databases likely to contain responsive information, including sources containing the appropriate version of hyperlinked documents, if any. If necessary, the Parties will meet and confer to discuss this subject.

(b) The Producing Party's collection and review of ESI shall include data sources the Producing Party reasonably believes have unique data responsive to the requests within a reasonable date range based on the claims asserted. Each Party will use its best efforts to filter out common system files and application executable files by using a commercially recognized hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. The following file types may also be culled based on file header information: Application Package File, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Dynamic Link Library, Event Log Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, QuickTime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## VII. PROCESSING

(a) Email attachments and embedded files must be mapped to their parent Document in the production deliverable in the BEGATTACH field.

(b) To the extent any produced Documents are password-protected, the Producing Party shall make reasonable efforts to unlock the Document prior to production or provide passwords in order to allow access by the Receiving Party. If the Producing Party is unable to process a Document because of unknown passwords or other encryption, the Producing Party shall retain a listing of such Documents in an exception report.

## VIII. DE-DUPLICATION

(a) The Parties will perform global de-duplication of ESI (at the family level where applicable) according to MD5 or SHA-1 hash values. Relevant Custodians of a de-duplicated Document shall be identified in the "All Custodians" metadata field. In the case of rolling productions, an overlay data file shall be produced along with each volume to account for updated duplicate Custodian information in the All Custodians field.

(b) In order to reduce Document volume, the Parties may utilize "Email thread suppression." As used in this Agreement, Email thread suppression means producing the identified most-inclusive Emails, as well as lesser-inclusive Emails with unique attachments, or with different senders/recipients visible on a specific Email than what is visible in the later-in-time Email(s), and excluding Emails constituting exact duplicates of Emails, known as duplicate spares. A most inclusive email family is one that contains all content from the prior-in-time or lesser-included

emails, including showing the same senders and recipients as on the standalone version of each such earlier email, and including all attachments, for that branch of the email thread. When producing the most-inclusive Email in a thread, the Parties need not also produce lesser-included Emails in the thread, provided that none of the earlier Emails in the chain contained non-identical attachments, or display senders or recipients not visible on the later-in-time Email. To the extent an Email splits off into multiple different threads, each such thread should have its own most-inclusive Email family produced (to the extent such family is responsive and non-privileged). The Parties agree that removal of available lesser-included Emails from potential production will reduce the costs of document review, production, and litigation-support hosting. Upon a showing of good cause, the Producing Party agrees to provide metadata for specific Documents and Emails that are not produced upon identification and request by the Receiving Party.

## IX. REVIEW

(a) When Document, ESI, or data produced in accordance with this Agreement is used in any proceeding herein including depositions, hearings, or trial, the image copy of Documents shall be the copy used unless the image copy is so illegible or unwieldy to make it impractical to use as a deposition exhibit, in which case the native version may be used. If the native version is used as an exhibit, the record of the deposition must identify the exhibit using its BATES number, and the

BATES number shall also be written on any paper or electronic copy of the exhibit. The confidentiality designation of the Document shall also be stated on the record of the deposition and shall be written on any paper or electronic copy of the exhibit. Extracted text files shall not be used in any proceeding as a substitute for the image of any Document.

(b) Each Party will bear the costs to process and review its own Documents according to this Agreement. Notwithstanding this Paragraph, nothing in this Agreement limits or prohibits a prevailing Party from seeking recovery of all allowable fees and costs, including attorneys' fees and costs, as may be permitted under applicable law.

(c) Nothing in this Agreement shall be construed to affect, modify, or amend the Parties' Stipulated Protective Order filed with the Court.

(d) Nothing in this Agreement shall be construed to affect the discoverability or admissibility of any ESI or paper Documents. All objections to the discoverability or admissibility of any ESI or paper Documents are preserved and may be asserted at any time in accordance with applicable law.

## X. PRODUCTION FORMATS

(a) The following procedures apply to producing Documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

(b) Except as otherwise stated herein, the Parties will produce Documents originating as ESI, or kept as such in the ordinary course, in .TIFF Format with extracted text (or searchable PDF if production Format dictates), along with the listed metadata fields when available. The Parties will provide a load file compatible with Concordance and with a BATES number field included on the load file to match text and metadata with .TIFF images. With respect to ESI, data on the load file will include fields listed in *Appendix A*.

(c) The Parties agree that to the extent that a Producing Party elects to produce Hard Copy Documents in electronic Format, such Documents will be produced in the following Format:

1. Single page Group 4 .TIFF files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, unless a Document requires a higher resolution in order to be appropriately viewed.

2. A unique BATES number shall be assigned to each page, and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying image. Each image should have a unique file name, which will be the BATES number of the individual page.

3. Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the page or other practical area. The Parties

shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image.

4. In scanning paper Documents, distinct Documents should not be merged into a single record, and single Documents should not be merged into multiple records (i.e., paper Documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize Documents correctly and will commit to address situations where there are improperly unitized Documents.

5. The Parties agree that any file folders and/or Documents affixed to Hard Copy Documents will be scanned as separate Documents.

6. The Parties agree that the Producing Party shall also produce searchable optical character recognition ("OCR") text of scanned paper Documents consistent with the specifications for Searchable Text set forth in Section X(e), below.

(d) The Parties will produce in Native Format those Documents and ESI that do not convert well to .TIFF images (e.g., Excel, PowerPoint, oversized drawings, picture files, audio and video files), except that PowerPoint files, drawings, and picture files may be produced in .TIFF image format and not in Native Format to the extent they require redactions be made prior to production. Excel files

may be produced as redacted Native Files. Any Documents produced in Native Format should be produced in accordance with the following specifications:

1. A unique Document number shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be ABC-JD-00000001.

2. For each produced Native File, the Producing Party will provide a static image slipsheet indicating that the Document was produced in Native Format and providing the unique BATES number and Confidentiality designation for the corresponding Native File.

(e) Except for those Documents produced in Native Format pursuant to Section X(d), above, the Parties agree that ESI will be produced in .TIFF Format according to the following specifications:

1. The Parties will produce Document images in black and white as single-page, Group IV .TIFF image files with an image load file in Concordance/Opticon file Format. If particular Documents warrant a different Format (e.g., production of color images instead of black and white), the Parties shall cooperate to arrange for the mutually acceptable production of such Documents.

2. A unique BATES number shall be assigned to each page, and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying image. Each image should have a unique file name, which will be the BATES number of the individual page.

3. Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the page. The Parties shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image.

(f) Extracted text should be provided with all records, except for Documents that originated as Hard Copy or redacted Documents where OCR will be provided. Extracted or OCR text should be produced as a Document-level multi-page text file with the text file named the same as the BEGBATES field and placed in a separate folder. The production file path of the text file must be provided in the .DAT file in the TEXTLINK field. For files produced natively, the production file path of the Native File (also named the same as the BEGBATES field) must be provided in the .DAT file for the NATIVELINK field. OCR text will be provided for redacted Documents.

(g) The Parties will include metadata, if available in the original file, in a .DAT file the fields present in Appendix A.

(h) Generally, relevant ESI stored in databases should be produced in a mutually agreeable and reasonably usable Format.

1. The Parties will meet and confer to address the production and production Format of any responsive data contained in a database or other structured data source.

2. Nothing herein shall obligate a Producing Party to custom reporting that is disproportionate to the needs of the case under Rule 26. Where applicable, the Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

(i) The Parties share a desire to ensure that ESI is produced in a functional search and review Format. The Parties recognize that certain ESI may not be amenable to the proposed technical specifications. ESI such as collaborative tools, social media platforms, voice, and video files etc., are included in this category. In such circumstances, Parties will meet and confer to regarding the appropriate form of production.

(j) In making any production in this Lawsuit, no Party will be obligated to identify the specific discovery requests to which individual documents relate. To the extent any disputes arise as to the documents produced in response to specific discovery requests, the Parties will meet and confer regarding such issues.

## XI. REDACTIONS

The Parties may redact (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law, or regulation (e.g., protected personal information); and (3) non-relevant highly confidential mergers and acquisitions information which may affect future share price. If, during the course of discovery, a Party identifies other highly sensitive information that the Party has good cause for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court. The Parties will produce redacted Documents in .TIFF Format with corresponding searchable OCR text (or in searchable PDF if production Format dictates), and shall electronically "burn" the word "redacted" with a legend describing the redaction (e.g., "REDACTED—PRIVILEGED") onto the page and location of the redaction(s). For spreadsheets requiring redaction, the Producing Party shall include a standard legend describing the redaction (e.g., "REDACTED—PRIVILEGED") on all redacted fields, cells, and pages. For file types produced with redactions in Native Format, associated metadata that would reveal redacted information shall be similarly protected from disclosure.

## XII. PRIVILEGE LOG

(a) Consistent with the Federal Rules of Civil Procedure, a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity, or any similar claim, shall provide to the Receiving Party a privilege log, except that the Parties shall have no obligation to log (i) communications between the Producing Party and outside counsel except where outside counsel appears only in the "cc" field; (ii) internal communications within a law firm; (iii) work product material created as part of litigation; or (iv) documents created or communications sent after the date of the filing of the complaint.

(b) The privilege log will contain the following fields of information to the extent that such information does not reveal privileged information: Document Date, Custodian(s), Author/Email From (where applicable), Recipients (where applicable), Filename/Email Subject, Privilege Claim, Redacted (Y/N). Any Email thread that is withheld on the grounds of privilege, immunity, or any similar claim may be logged as one Document, by logging the most inclusive Email of each identified thread. If any lesser inclusive Emails contain unique attachments or different senders/recipients, those Emails must be logged as separate Documents.

## XIII. TIMELY PRODUCTION

The Parties will endeavor to produce Documents on a rolling but reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of

Civil Procedure. If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone or in person in order to attempt to reach a mutually agreeable consensus prior to court involvement.

## XIV. FINAL DISPOSITION OF PRODUCED MATERIALS

Within 60 days of settlement or final adjudication of the Lawsuit, including the expiration or exhaustion of all rights to appeal or petitions for extraordinary writs, each Receiving Party (including legal counsel, experts, and vendors) to whom any materials were produced shall, without further request or direction from the Producing Party, promptly destroy all ESI, paper Documents, or other information, items, or data received including, but not limited to, copies or summaries thereof, with the exception of attorney work product and correspondence that may contain such copies or summaries that may be retained by counsel for the Receiving Party and which shall remain subject to all other applicable restrictions of this Agreement and any protective orders entered in this matter. Such attorney work product and correspondence that counsel is entitled to retain includes an archival copy of all pleadings; motion papers; trial, deposition, and hearing transcripts; legal memoranda; correspondence; deposition and trial exhibits; expert reports; and consultant and expert work product. For the avoidance of doubt, the foregoing destruction obligation includes any ESI, paper Documents, or other information, items, or data received that was submitted, uploaded, transferred, or otherwise

exposed to any Large Language Model ("LLM") or Artificial Intelligence ("AI") platform, including any copies, embeddings, indexes, caches, stored prompts or outputs, or other retained representations of such material, to the extent within the Receiving Party's possession, custody, or control. The Receiving Party shall also ensure that any authorized LLM or AI platform used in connection with this litigation deletes such material in accordance with the requirements of this Agreement. The Receiving Party shall provide written certification of destruction to the Producing Party no later than sixty (60) days after the termination of this matter.

## XV. MISCELLANEOUS

(a) Each Receiving Party (including legal counsel, experts, and vendors) shall not load, import, submit, or otherwise transfer Documents, ESI, or data produced in this matter to a publicly accessible LLM or a publicly accessible ("AI") platform. The Receiving Party (including legal counsel, experts, and vendors) shall not utilize any non-public LLM or non-public AI platform where the Producing Party's Documents, ESI, or data are a) used to train LLMs or AI that are made accessible to others who are not authorized to access Receiving Party's Documents, ESI, or data or b) otherwise made accessible to other users who are not authorized to have access to Receiving Party's Documents, ESI, or data. Additionally, before exposing any Documents, ESI, or data produced in this litigation to any non-public

LLM or non-public AI platform (e.g., enterprise-level Claude), the Receiving Party shall ensure that such LLM or AI platform does not use, retain, or incorporate produced Documents, ESI, or data to train, fine-tune, or otherwise improve the non-public LLM or non-public AI platform other than for the limited use of the authorized Party for the sole purpose of this litigation.

(b) If a Receiving Party discovers any loss or theft of any Documents, ESI, or data produced by another party, including actual or suspected unauthorized access, the Receiving Party or authorized recipient shall: (1) promptly provide written notice to the Producing Party of such breach; (2) investigate and make reasonable efforts to remediate the effects of the breach; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident. In any event, the Receiving Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access.

(c) If a Receiving Party is served with a discovery request, subpoena, or a court order issued in other litigation that compels disclosure of any Documents, ESI, or data produced by another Party or non-party to this litigation, the Receiving Party must:

1. Promptly notify the Producing Party in writing and include a copy of the discovery request, subpoena, or court order;
2. Promptly notify in writing the party who served the discovery request or caused the subpoena or order to issue in the other litigation that some or all of the material covered by the discovery request, subpoena, or order is subject to this Agreement. Such notification shall include a copy of this Agreement; and
3. Cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party whose data may be affected.

**XVI. MODIFICATION**

This Agreement may be modified by an Order approved by the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

**CONSENTED TO BY:**

*/s/ J. Cameron Tribble*
J. Cameron Tribble
GA Bar No. 754759
ctribble@barneslawgroup.com
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
T: 770-227-6375

Jonathan M. Streisfeld (*pro hac vice)*
streisfeld@kolawyers.com
Kristen Lake Cardoso (*pro hac vice)*
cardoso@kolawyers.com

*/s/ W. Alex Smith*
*(with express permission)*
Lindsey B. Mann (GA Bar No. 431819)
lindsey.mann@troutman.com
W. Alex Smith (GA Bar No. 532647)
alex.smith@troutman.com
Samuel D. Lack (GA Bar No. 749769)
samuel.lack@troutman.com

**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St., N.E., Suite 3000

**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
T: 954-525-4100

Alexander E. Wolf (*pro hac vice*)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
T: 872-365-7060

Jonathan Shub (*pro hac vice*)
Samantha E. Holbrook (*pro hac vice*)
jshub@shublawyers.com
sholbrook@shublawyers.com
**SHUB JOHNS & HOLBROOK LLP**
Four Towers Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
T: 610-477-8380

Marshal J. Hoda (*pro hac vice*)
marshal@thehodalawfirm.com
**THE HODA LAW FIRM, PLLC**
12333 Sowden Road
Suite B, PMB 51811
Houston, Texas 77080
T: 832.848.0036

***Counsel for Plaintiffs***

Atlanta, Georgia 30308
T: 404.885.3000
F: 404.885.3900

Matthew A. Macdonald, *pro hac vice*
matthew.macdonald@wsgr.com
Matthew K. Donohue, *pro hac vice*
mdonohue@wsgr.com

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
953 East 3rd Street, Suite 100
Los Angeles, CA 90013
T: 323.210.2900
F: 323.210.7329

William P. Barnette (GA Bar No. 359833)
wbarnette@kslaw.com
Matthew J. Washnock (GA Bar No. 272621)
mwashnock@kslaw.com

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
T: 404.572.4600
F: 404.572.5100

***Counsel for Defendant Home Depot U.S.A., Inc.***

# APPENDIX A

# APPENDIX A

1. **LOAD FILE SPECIFICATIONS:**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**: Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT:** Reference File Path to TEXT file in DAT file
   - **Native Files Produced:** Reference File Path to Native file in DAT file

**ESI PRODUCTION METADATA FIELDS:**

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| END ATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of |

| | |
|---|---|
| | the email |
| ATTACHMENTS | List of filenames of all attachments, delimited by";" when field has multiple values. |
| AUTHOR | Original composer of document or sender of email message. |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| FILEEXT | The file extension of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |
| CONVERSATION ID | Email thread created by email system, character string of numbers and letters created in initial email and added to for each reply or forward of the email. |
| CONFIDENTIALITY | The Confidential or Attorney Eyes Only designation, as appropriate |

**2. HARDCOPY DOCUMENTS METADATA FIELDS:**

- **BegBates**: Beginning Bates Number
- **EndBates**: Ending Bates Number
- **BegAttach**: Beginning Bates number of the first document in an attachment range
- **EndAttach**: Ending Bates number of the last document in attachment range
- **Custodian**: Name of the Custodian(s) of the File(s) Produced – Last Name, First Name format

## CERIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1.

Dated: November 4, 2026.

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

Dated: November 4, 2026.

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759